## Richmond.

THE TITLE INSURANCE COMPANY OF RICHMOND, INC. V.
THE INDUSTRIAL BANK OF RICHMOND, INC.

March 19, 1931.

Present, Campbell, Holt, Epès, Hudgins and Browning, JJ.

The opinion states the case.

*R. E. Cabell* and *Beverly H. Davis,* for the plaintiff in error.

*Christian & Barton,* for the defendant in error.

CAMPBELL, J., delivered the opinion of the court.

This was an action of trespass on the case in assumpsit by The Industrial Bank of Richmond, Inc., against The Title Insurance Company of Richmond, Inc., on a title insurance policy dated July 24, 1925. There was a trial by jury which resulted in a verdict in favor of plaintiff for the principal sum of $737.15. Thereupon, the defendant, by counsel, moved the court to set aside the verdict as contrary to the law and the evidence, which motion the court overruled, and in accordance with the verdict entered judgment in favor of the plaintiff.

The facts of the case are undisputed and are as follows: The plaintiff, on July 20, 1925, made a loan of $2,250.00 to J. M. Ball, secured by deed of trust upon certain property situated in High Point, North Carolina. This loan was evidenced by sixty notes executed by Ball, payable monthly at one to sixty months, for the sum of $37.50 each. Plaintiff's deed of trust was inferior to a prior deed of trust executed by Ball to secure the sum of $4,000.00.

On July 24, 1925, the defendant issued and delivered to the plaintiff, in consideration of an agreed premium, a policy of title insurance on the Ball property. Under the terms of the policy defendant undertook to indemnify plaintiff as mortgagee against loss by reason of any defect in the title, unmarketability of the title, or by reason of liens or encumbrances resting upon the property (with certain exceptions, to-wit, the $4,000.00 deed of trust) at the date of the policy.

Ball defaulted in the payment of his notes and plaintiff directed the trustees named in its deed of trust to make sale of the property, in order to subject same to the payment of the debt. Sale of the property was accordingly made on May 11, 1926, and plaintiff became the purchaser at the price of $2,078.43.

On October 29, 1926, plaintiff made a sale of the property to one N. D. Rogers for the sum of $2,550.00, secured by deed of trust. Rogers failing to meet the payments, the property

was again sold under the terms of the deed of trust and plaintiff reacquired the same by purchase.

On May, 1928, plaintiff sold the premises to the Pointer Realty Company for the sum of $6,500.00. Instead of the property being free of all liens and encumbrances at the date of the loan to Ball and at the date of the delivery of the title policy, it was subject to liens and assessments for sidewalk and street improvements imposed by the city amounting to the sum of $737.15. Prior to the sale of the property to the Pointer Realty Company plaintiff notified the defendant that it was still the owner of the property and sought a settlement with defendant of the street improvement liens. Defendant denied liability and also declined to accede to a valuation of the property as provided for in the policy of insurance. Thereupon, the present action was brought with the result as heretofore stated.

To defeat a recovery under the conditions and stipulations of the policy, and under the law of the case, it is contended by the defendant that the plaintiff was insured as a mortgage noteholder and not as an owner of an absolute estate; that the facts do not show that plaintiff sustained any loss or damage; that the sale of the property by the plaintiff relieved the defendant of any liability under the terms of the policy; that the trial court erred in granting and refusing instructions.

The contentions of the defendant are, in our opinion, so completely answered in a written memorandum filed by the Honorable Frank T. Sutton, trial judge, which so clearly sets forth our view of the case that we hereby adopt the memorandum as a part of this opinion:

"This action is based on a policy of insurance, the broad general language of which is that it 'doth hereby insure' the 'insured against all loss or damage not exceeding $2,450.00 which the insured shall sustain by reason of any defect or defects affecting the premises described in Schedule A * * * or affecting the interest of the insured therein.'

"The estate or interest of the insured was stated to be sixty notes for $37.50 each, etc., secured by deed of trust on property at the southwest corner of Guilford avenue and Burns street, in the city of High Point, N. C.

"There was default under the mortgage and it was foreclosed, and at the sale the insured bought in the property at a few dollars less than its debt secured.

"In passing title papers under this foreclosure, one of the trustees (D. C. MacRae) mentioned that the title passed to the insured clear with the exception of the first mortgage (which was not insured against) and 'street assessments which run over a period of ten years.' These 'street assessments' were the source of the trouble which resulted in the bringing of this suit. The insured promptly wrote to MacRae to learn when the street assessments were levied. It wrote three or four times, but received no reply.

"In October, 1926, the insured sold the real estate to N. D. Rogers, making the condition that the purchaser assume the liens of the 'street assessments.' On June 26, 1927, the property was again foreclosed and again bought in by the insured to protect its lien (or unpaid purchase money).

"The insured still continued to write to MacRae for information as to the dates of the 'street assessments' and finally received, for the first time, the information which was in MacRae's letter of July 8, 1927. This letter showed that the assessments were prior to the date of the policy, though they were not among those lines or defects excepted from the insurance. The insured then, by its letters of July 12 and 13, 1927, called upon the insurer for protection and indemnity under the terms of the policy.

"J. D. Brown, who handled this matter for the insured, stated that he did not call on the insured earlier because the property had been sold to one N. D. Rogers for enough to bring the insurer out of the hole had said Rogers met his purchase money notes and also for the further reason that

at the time of the sale to Rogers he did not know that the dates of the street assessments were prior to the date of the policy. There followed a long correspondence beginning July 12, 1927, between the insured and the insurer, which resulted in a denial of liability by the insurer on April 14, 1928. On March 5, 1928, and during the course of the above correspondence, the insured notified the insurer that it still owned the property. Thereafter, and after the insurer had denied liability, the insured, on or about May 1, 1928, again sold the property.

"Under date of May 17, 1928, the insured notified the insurer it was ready to take up the question of a valuation of the real estate before bringing suit if the insurer desired it. The insurer declined this offer, giving as its reason that the valuation at the time was immaterial.

"The insured and the insurer agreed it would not be necessary before suit to have the policy transferred to the insured as owner and further agreed that the street assessments were liens prior to the date of the policy and it was not necessary to have that question settled by a court of competent jurisdiction. The verdict of the jury was in favor of the plaintiff and the court is asked to set the verdict aside.

"There are several conditions of the policy that should be adverted to. Under the heading 'Conditions of this Policy;' paragraph 2 reads:

" 'No claim for damages shall arise under this policy except under section 1 of these conditions, and except also in the following case: * * *.'

" 'IV—Where the insurance is upon the interest of the mortgagee and the mortgage has been adjudged by a final determination in a court of competent jurisdiction to be invalid or ineffectual to charge the premises described in this policy, or subject to a prior lien or encumbrance not excepted in this policy.'

"The stipulation of counsel above referred to was to the

effect that the 'street assessments' were prior to the date of the policy or mortgage insured.

"Paragraph 4, 'Conditions of this Policy,' then reads:

" 'No transfer of this policy shall be made, except that a policy held by the owner of the mortgage or other encumbrance may be transferred to the purchaser at a foreclosure sale where the property is bought in by or for the insured and except also in such other cases as this company may, by special written agreement permit; but no transfer of this policy shall be valid unless the approval of this company is endorsed hereon by its proper officers. Such approval may in any case be refused at the option of this company, and all interest of this policy (saving for damages accrued) shall cease by the transfer without such approval so endorsed * * *.'

"The stipulation of counsel above referred to was also to the effect that it was unnecessary to make this transfer before suit was brought. It would seem also that even had such transfer been refused, the damages having accrued suit might be brought without such approval.

"Paragraph 5 reads, so far as material to the facts of this case:

" '* * * In case of the service of any paper or proceeding the object or effect of which shall or may be to impugn, attach, or call in question the validity of the title hereby insured, as insured, or to raise any material question relative to a claim or encumbrance hereby insured against, or to cause any loss or damage for which this company shall or may be liable * * * it shall be the duty of the insured at once to notify this company in writing * * * in such cases * * * it shall be the duty of the insured to secure to it the right and opportunity to maintain or defend the action or proceeding * * * and to give it all reasonable aid therein and to permit it to use at its option the name of the insured. If such notice is not given this company within ten days after the service of the first summons or other process * * * then this policy shall be void. Provided,

however, * * * that no failure to give such notice shall affect the company's liability, if such failure has not prejudiced and cannot in the future prejudice this company.'

"On this phase of the case, there being evidence before the jury to justify such an instruction, the court instructed the jury as follows:

" 'The court instructs the jury that under the laws of the State of North Carolina which are the laws applicable to the question, the special assessment liens came into existence before July 24, 1925, and since it is not disputed that they were in existence unpaid on May 11, 1926, when the plaintiff acquired title to the land, subject to the first lien deed of trust, at the sale in foreclosure of the Ball deed of trust, and it is not disputed that the amounts thereof were respectively $126.42 with interest from January 16, 1925, and $610.73 and interest from February 17, 1925, and if they believe from the evidence that the interest or estate insured in the policy was lessened in value to the plaintiff by reason of a defect in the title which was insured against, then the jury shall find for the plaintiff; provided, however, that when the plaintiff received any letter informing it that there were special assessment liens it became the duty of the plaintiff to investigate with reasonable care and promptness to ascertain the dates they came into existence and upon ascertaining that those dates were prior to the date of the policy at once to notify the defendant of the liens; and if the jury shall believe from the evidence that there was a failure in one of these respects by the plaintiff and that the same was prejudicial to the defendant, then the plaintiff could not recover.'

"This instruction thus left it to the jury to ascertain under the evidence when the plaintiff was informed of the special assessments and the dates and whether it investigated with reasonable care and promptness anything that put it on notice that there was such a defect in the title and whether it, upon learning of the existence of such, promptly notified the de-

fendant. It further submitted to the jury under the evidence the question of determining whether if there was such failure by the plaintiff, it was prejudicial to the defendant. The verdict of the jury resolved these issues in favor of the insured.

"It is urged by the insurer that at the settlement of the sale made under the first foreclosure, the insured should have deducted the amount of the street assessment, thereby reducing the credit on the J. M. Ball notes; also that the insured should have promptly notified the insurer of the liens of these street assessments.

"There are several answers to this contention. D. C. Mac-Rae was the attorney who made the examination and report on the title for the insurer and it was on his report that the policy was issued. He was also one of the trustees in the deed of trust securing the notes insured. He was the only trustee who acted when the foreclosure proceedings were had and the settlement was made entirely through him. It was his duty, out of the proceeds of the sale, to pay off and discharge all liens (except such as the foreclosure was made subject to). But he failed to use any part of the purchase money to discharge these street assessments or to reduce the credit on the J. M. Ball notes, accordingly. MacRae in a certificate dated June 14, 1925, did call the attention of the insured to the existence of a lien in the form of street assessments. The insured, however, had the right to assume that MacRae, trustee, had charged in his account everything that should be deducted before crediting the J. M. Ball notes with the net proceeds. Such was his duty as trustee. The insured did promptly write to MacRae (about June) asking further information as to the date of these street assessments, but it did not get an answer from him until November 22, 1926, and then only after persistent inquiry. Promptly on receipt of this information the insured notified the insurer and called for indemnity. It is a mistake to say that the insured elected to exclude from the settlement this charge in the trustee's account

and not to reduce the credit on the J. M. Ball notes accordingly. Election can only be made after full knowledge of the facts. The insured had no such knowledge. It is the lack of knowledge of the condition of a title that prompts insurance. The policy insures the policyholder that what he does not know about the title so far as liens and defects are concerned, does not exist. It would be unreasonable to make it a condition precedent to getting relief that the policyholder notify the insurer of a defect of which he had no knowledge.

"It is contended that upon the discovery of the liens of the street assessments the insured should have had the property valued and if impaired by the defect, then called on the insurer to make good the amount of the impairment. The policy which is the contract between the parties contains no such provision. Clause 6 of 'conditions' gives the insurer a right to demand a valuation under certain conditions but the insurer has never demanded a valuation.

"It is contended that a resale by the insured for an amount sufficient to reimburse the insured the amount of its notes insured, terminated all rights under the policy and that in this case the insured sold the property to a third person for such an amount (substantially) and that in addition the purchaser agreed to assume the lien of the street assessments. A noteholder has a right to bid in a foreclosure. The policy in this case (Clause 4) recognizes such a right. The policy insures the security for his notes against defects in the title of the security. By such a purchase the insured transfers his notes for a title he has been told by the policy is good. In doing this he is entitled to rely on the assurances contained in the policy; although the insurer's liability cannot exceed the policy, to-wit—$2,450.00. In this case, relying on the policy, the insured, to protect its interest as noteholder, bid approximately the value of its notes. Whether it made a good or a bad bargain is not material to the issue here involved. Certainly if it made a bad bargain by bidding too much the

insurer's liability is not increased and if it made a good bargain the insurer's liability is not lessened. The price obtained at a public sale at auction, after notice, is considered a fair criterion of value. What a purchaser may obtain by private sale five months later is not a fair criterion. Too many circumstances may intervene to prevent it being such. When the insured gave up its notes for a title that was insured, it had reason to believe that title unimpaired. It thought it obtained an unimpaired title but it did not. At that time it suffered a loss equal to the amount of liens of the street assessments although it did not know it. As said in *Fox Chase Bank* v. *Wayne, etc.,* 258 Pa., p. 273, 101 Atl. 979: 'The plaintiff's loss was the fund it failed to receive because of the liens and not what some one might estimate the market values of the mortgage or property.' The plaintiff's loss occurred at the time it, relying on the policy, made its purchase, and is not measured by what it might realize at some future time under other conditions.

"The insured's right to indemnity accrued at the date of its first purchase but it did not know the facts that entitled it to claim indemnity. This excused it from, at that time, calling upon the insurer. For this same reason its case cannot be prejudiced because not knowing the priority of the liens of the street assessments it later made a private sale of the property. It appears from the evidence that when the insured found a purchaser by private sale it had been apprised of the existence of the street assessments, but although it had exerted itself to learn the date thereof, it had no information at the time of such resale that the liens were prior to the date of the policy.

"The insured found a purchaser willing to give $2,550.00 and assume the liens of the street assessments. If these street assessments amounted to the sum of $737.15, approximately, then the purchaser was willing to give $3,287.15 for the property. Therefore, on account of the street assessments the insured at such resale received $737.15 less than it otherwise would have and the insured was damaged to that amount.

"The insurer's liability became fixed when the insured, relying on the policy, made a bid at the first foreclosure and failed to receive the subject matter of its purchase unimpaired by the street assessments. From that time the only duty devolving upon the insured was, when it learned that the date of the street assessments was prior to the date of the policy, to promptly notify the insurer. Whether it did or did not act promptly and whether or not the insurer suffered any prejudice thereby, was submitted to the jury under Instruction 3. The jury resolved these issues in favor of the plaintiff and the court is of the opinion the verdict is in accord with the evidence.

"It is further contended that because the insured transferred the title to a third party and has not had to pay damages because of any covenant in such transfer in regard to title or warranty, there is now no liability on the insurer. The insurer relies on clause 7 of paragraph 2 of 'Conditions of this Policy.' This paragraph contains several clauses, under any one of which, when applicable to the facts, a liability was imposed upon the insurer. These clauses are cumulative. Clause 4 referred to on a previous page of the memorandum was sufficient to impose a liability on the insurer because it has been established between the parties that the property insured was at the time of the insurance 'subject to prior liens or encumbrances not excepted in the policy.'

"Paragraph 7 of the policy reads:

" 'Whenever this company shall have settled a claim under this policy it shall be entitled to all the rights and remedies, which the insured would have had against any other person or property in respect to such claim had this policy not been made, and the insured will transfer or cause to be transferred to this company such rights and permit it to use the name of the insured for the recovery or defense thereof * * *. And the insured warrants that such right of subrogation shall invest in this company unaffected by any action of the insured.'

"It is urged by the insurer that because of the insured's subsequent dealings with the subject matter of the policy this right of subrogation cannot now be transferred to it unimpaired.

"There are two answers to this, (1) Until the insurer settles the claim no right of subrogation arises. And at this time it is impossible to say with certainty that the insured will not put himself in a position (when settlement shall have been made) to pass to and insure the insurer of complete and full subrogation. That is not beyond the possible.

"(2) The breach of this warranty by the insured, if it should be breached, is not a complete defense to the policy. The breach may be availed of at the proper time in the proper manner, to secure the insurer the damage he may suffer by such breach of warranty. Such a right might be available to him by a plea of statutory recoupment. The suit being brought on a sealed instrument, the common law recoupment could not be pleaded, but there might also be a remedy by independent action at law or suit in equity. Under Code, section 6145, statutory recoupment must be by special plea sworn to, but no such plea has been filed in this action. For these reasons reliance in this proceeding on paragraph 7 of the policy cannot avail the defendant.

"For the foregoing reasons the motion to set aside the verdict and award a new trial will be overruled and judgment entered according to the verdict of the jury."

We are of opinion that the law and evidence sustain the verdict of the jury in favor of the plaintiff, and, therefore, the judgment thereon complained of must be affirmed.

*Affirmed.*