# Douglas C. Curtis, Jr., et al.

## v.

# Lee Land Trust, et al.

Record No. 850465

June 10, 1988

Present: All the Justices

*Robert B. Halkowich (Spencer, Tanner and Halkowich*, on briefs), for appellants.

*Herbert V. Kelly (Robyn C. Hylton; Alan A. Diamonstein; Jones, Blechman, Woltz & Kelly; Diamonstein, Drucker & Kamp*, on brief), for appellees.

COMPTON, J., delivered the opinion of the Court.

In this controversy arising from a land trust established pursuant to Code § 55-17.1, the central question presented is whether personal liability on a deed of trust note may be imposed on the beneficiaries of the trust who did not sign the note.

In 1972, Douglas C. Curtis, a "very sophisticated" businessman who "bought and sold land on many occasions," and his wife, entered into an option agreement with Drucker & Falk, a real estate broker, for the sale of a 77-acre tract of land in Newport News owned by the Curtises known as "Merry Oaks." During the negotiations, Falk advised Mr. Curtis he was taking the option on behalf of an unknown purchaser. In January 1973, Drucker & Falk assigned the option to appellees Walter S. Segaloff and William T. Roos, two of the defendants below.

Desiring to avoid personal liability on the transaction, Segaloff and Roos elected to establish a land trust known as the Lee Land Trust, the third defendant below. In March 1973, Segaloff and Roos entered into a land trust agreement with United Virginia Bank/Citizens & Marine. The agreement provided *inter alia* for the bank, as trustee, to take title to the real estate, to execute certain documents, and to hold the property for the uses and purposes set forth in the agreement. Segaloff and Roos were the trust beneficiaries.

Curtis and his wife then conveyed the property to the Lee Land Trust receiving a cash payment of 29 percent of the purchase price. The debt for the balance was evidenced by a note, executed by the bank as trustee for the Lee Land Trust, in the amount of $354,649.65 payable to the Curtises. This note was secured by a purchase money deed of trust, also executed by the bank as trustee for the Lee Land Trust.

The required payments under the note and deed of trust were not made on schedule. The Curtises granted several extensions of time. In 1978, Mr. Curtis died. Subsequently, appellants, plaintiffs below, Douglas C. Curtis, Jr.; Anne Sims Curtis; Central Fidelity Bank, formerly the First National Bank of Yorktown, Co-Executors of the Estate of Douglas C. Curtis; and Anne S. Curtis, the widow, foreclosed on the property. A deficiency of $183,018.42 resulted from the foreclosure proceeding. In the present action, the plaintiffs seek recovery of the deficiency from the Lee Land Trust and the beneficiaries.

Following a bench trial, the court ruled that the defendants "were not personally liable on the deed of trust note as alleged in the Motion for Judgment herein." Accordingly, the court dismissed the plaintiffs' claim for the deficiency. The court entered judgment, however, against Segaloff and Roos for an undisputed amount based on a separate agreement not pertinent here. We granted the plaintiffs this appeal from the March 1985 final order.

In 1962, the General Assembly enacted Code § 55-17.1 authorizing use of a land trust as a method of holding title to real estate. Acts 1962, ch. 452. The statute provides as follows:

"No trust relating to real estate shall fail nor shall any use relating to real estate be defeated because no beneficiaries are specified by name in the recorded deed of conveyance to the trustee or because no duties are imposed upon the trus-

tee. The power conferred by any such instrument on a trustee to sell, lease, encumber or otherwise dispose of property therein described shall be effective and no person dealing with such a trustee shall be required to make further inquiry as to the right of such trustee to act nor shall he be required to inquire as to the disposition of any proceeds.

"In any case under this section, where there is a recorded deed of conveyance to a trustee, the interest of the beneficiaries thereunder shall be deemed to be personal property.

"Nothing in this section shall be construed (1) to affect any right which a creditor may otherwise have against a trustee or beneficiary, (2) to enlarge upon the power of a corporation to act as trustee under § 6.1-5 or (3) to affect the rule against perpetuities."

In 1975, the second paragraph was added by amendment. Acts 1975, ch. 375.

■ The Virginia Land Trust, patterned after the so-called "Illinois Land Trust" in use since before the turn of the present century, differs from a common-law trust in which legal title is vested in the trustee and equitable title is held by the beneficiaries. "Presumably in a land trust the complete title is vested in the trustee; the beneficial interest is personalty, and full power of management and control is retained by the beneficiaries." Arntson, *The Virginia Land Trust — An Overlooked Title Holding Device For Investment, Business and Estate Planning Purposes*, 30 Wash. & Lee L. Rev. 73, 74 (1973). The land trust consists of two main documents: a trust agreement, which is not recorded, executed by the beneficiaries and the trustee; and a deed of trust which is recorded. *Id.*

In the present case, the seven-page trust agreement between the bank as trustee and the beneficiaries provided that the beneficiaries "shall be entitled to all the earnings, avails, and proceeds of the Property according to their interests." Segaloff and Roos each had a 50 percent interest and the property was the sole asset of the trust. The agreement also provided that the beneficiaries' interests in the property "shall be deemed to be personal property" and that no beneficiary "shall have any legal or equitable right, title or interest, as realty, in or to any real estate which constitutes all or part of the Property or the right to compel partition." Additionally, the agreement provided that, with respect to

the property, the beneficiaries had the right "to direct the Trustee to convey or otherwise deal with the title to the Property," and the right "to manage and control" the property.

According to the agreement, the trustee had a duty to deal with the property pursuant to the written directions of the beneficiaries. These duties included the obligation to execute all instruments necessary "to protect and conserve" the property and to lease, encumber, sell, or grant options to purchase the property. The trustee was directed to sell the property at public sale if any part of it remained in the trust after the expiration of 20 years and to divide the proceeds of sale among the beneficiaries according to their respective interests.

According to the agreement, its objects and purposes were to hold title to the property and conserve it until its sale or other disposition. Also, the agreement provided that it should not be deemed to create or evidence the existence of a corporation "or any other type of business trust, or an association in the nature of a corporation, or a co-partnership or joint venture." In addition, the agreement provided that the beneficiaries shall "have full and exclusive control over the management and operation of the property." Also, the agreement specified that the trustee "shall have no individual liability or obligation whatsoever" arising from its ownership of the legal title to the property or with respect to any act done in dealing with the property.

The deed of trust note for the deferred purchase price provided, "This Note is executed by the United Virginia Bank/Citizens & Marine, not individually, but as Trustee under the provisions of a certain Trust Agreement designated as 'Lee Land Trust,' . . . and it is expressly understood and agreed that nothing herein contained shall be construed as creating any liability on the Grantor individually to pay this note." The note was signed "UNITED VIRGINIA BANK/CITIZENS & MARINE as Trustee and not in its individual capacity" by a trust officer.

The recorded purchase money deed of trust contained similar language as the note which eliminated "individual" liability of the bank. The deed of trust was executed by a bank trust officer in the same form as the note.

Neither the note nor the deed of trust was executed by either beneficiary.

On appeal, seeking reversal and final judgment against the beneficiaries, not the trust, the plaintiffs contend that the court erred

in deciding that Segaloff and Roos were not personally liable on the note. The plaintiffs also contend that the court erred in ruling that certain exculpatory language of the note and deed of trust relieved the beneficiaries of any liability on the note. We disagree.

■ Initially, we reject summarily plaintiffs' contention that this land trust created under Code § 55-17.1 is not a trust at all but some type of "business organization" such as a partnership. The General Assembly's intent to authorize creation of a land trust could not be expressed any clearer in the statute. And the trust agreement employed in this transaction plainly created such a trust. Indeed, the trust agreement specifically provided that it shall not be deemed to create or evidence the existence of a corporation, association, joint venture, or partnership. And the facts in this record are utterly insufficient to support a finding that an entity other than a land trust actually was created.

■ Turning to the question of the beneficiaries' personal liability on the deed of trust note, we must consider first the effect of the Uniform Commercial Code. As we have noted, Segaloff and Roos did not sign the note or deed of trust. And their names do not appear in either instrument. UCC § 8.3-401(1) provides that "[n]o person is liable on an instrument unless his signature appears thereon." Official Comment 1 states

"No one is liable on an instrument unless and until he has signed it. The chief application of the rule has been in cases holding that a principal whose name does not appear on an instrument signed by his agent is not liable on the instrument even though the payee knew when it was issued that it was intended to be the obligation of one who did not sign."

The plaintiffs, acknowledging the rule of § 8.3-401(1), rely on UCC § 8.3-403(1) and argue that the note was executed by the trustee in a representative capacity for the beneficiaries and thus they individually are liable. That subsection provides, "A signature may be made by an agent *or other representative*, and his authority to make it may be established as in other cases of representation. No particular form of appointment is necessary to establish such authority." (Emphasis added.) Official Comment 1 states that the definition of "representative" includes "an officer of a corporation or association, *a trustee*, an executor or administra-

tor of an estate, or any person empowered to act for another."
(Emphasis added.)

Conceding that the bank signed the note as trustee in a representative capacity within the meaning of § 8.3-403(1), the defendants assert that the signature was affixed as a representative of the Lee Land Trust and not of the beneficiaries. Therefore, the defendants say, the trial court correctly ruled there was no personal liability on the beneficiaries under the UCC. We agree.

■ The beneficiaries did not sign the note in any capacity. Their names were not mentioned in the note or deed of trust. Rather, the note was signed by the trustee for the Lee Land Trust. The form of the bank's signature clearly demonstrated the bank's representative capacity. Moreover, the terms of the note specified that the bank executed it "as Trustee . . . of . . . 'Lee Land Trust.' " Thus, looking only to the UCC, no personal liability may be imposed upon Segaloff or Roos.

■ Next, however, we must address the effect of exculpatory, waiver language in the note and deed of trust upon the beneficiaries' liability. The pertinent language of the note, almost identical to the terms of the deed of trust, provided

"any such liability, if any, being expressly waived by the Trustees and by every person now or hereafter claiming any right or security hereunder, and that, so far as the United Virginia Bank/Citizens & Marine, individually is concerned, the legal holder or holders of this note and the owner or owners of any indebtedness accruing hereunder shall look solely to the premises hereby created, in the manner herein and in said deed of trust provided, or by action to enforce the personal liability of the Guarantor, if any. This waiver shall in no way affect the personal liability of any co-signer, endorser or guarantor of this note."

The plaintiffs argue the trial court misconstrued that language and held that it limited recourse of the noteholder to the premises secured by the deed of trust, absent express or implied assumption of liability. The plaintiffs say that the beneficiaries individually are liable even though Segaloff and Roos did not sign the note. They point to the prefatory words "so far as United Virginia Bank/Citizens & Marine is concerned," and argue that the lan-

guage was meant to apply only to the bank, and not to the beneficiaries. We disagree.

We conclude that the provision in question, when read in its entirety, does not impose on the beneficiaries individual liability on the note. In order to adopt the plaintiffs' view, language would have to be included which is not apparent on the face of the instrument. Moreover, the plaintiffs' logic is flawed. The effect of the argument is that because the provision exculpates the bank, it necessarily inculpates the beneficiaries.

It must be remembered that the bank, as trustee, was the "Grantor" or maker of the note. Therefore, the terms deal mainly with the maker's obligations. While the language focuses on the bank's "liability," it specifically provides that the noteholder "shall look solely to the premises." This is a clear reference to recourse only against the property in lieu of personal liability upon anyone. In fact, the provision states, "This waiver shall in no way affect the personal liability of any co-signer, endorser or guarantor of this note," an implicit reference to recourse against the property unless personal liability specifically has been assumed. Importantly, no one co-signed, endorsed, or guaranteed the note or deed of trust.

In sum, the failure of the note to assert the beneficiaries' refusal to assume personal liability does not give rise to such personal liability. Rather, the contrary is true. Because of the nature of the land trust, before personal liability can be imposed upon the beneficiaries they must expressly or by implication promise to pay. *Barkhausen* v. *Continental Illinois Nat. Bank & Trust Co.*, 3 Ill.2d 254, 266, 120 N.E.2d 649, 656, *cert. denied sub nom. Edwards* v. *Barkhausen*, 348 U.S. 897 (1954). And there was no express or implied assumption of liability in this case. Manifestly, the trust property only must be employed to answer the debt.

Finally, the record in this case shows an arm's length transaction involving a sophisticated businessman and dealer in land as the seller. The respective bargaining positions of the parties were equal. Therefore, the expressed intention of the parties contained in the relevant documents drawn pursuant to the land trust statute controls.

Accordingly, the judgment of the trial court will be

*Affirmed.*