**BLUFF VENTURES LIMITED PARTNERSHIP, a Virginia Limited Partnership, Plaintiff–Appellant,**

v.

**CHICAGO TITLE INSURANCE COMPANY, Defendant–Appellee.**

**No. 90–1715.**

United States Court of Appeals, Fourth Circuit.

Argued Nov. 1, 1990.

Decided Nov. 13, 1991.

As Amended Nov. 22, 1991.

Robert K. Richardson, Odin, Feldman & Pittleman, P.C., Fairfax, Va., argued, for plaintiff-appellant.

Frank Eugene Brown, Jr., Mays & Valentine, Arlington, Va., argued, for defendant-appellee.

Before WIDENER and WILKINS, Circuit Judges, and HOUCK, District Judge for the District of South Carolina, sitting by designation.

## OPINION

WIDENER, Circuit Judge:

Bluff Ventures Limited Partnership appeals the district court's determination that Chicago Title Insurance Company owed nothing under the terms of its lender's policy. We reverse and remand with instructions.

Chicago Title issued a lender's title insurance policy on November 21, 1988, naming Thomas L. Swarek as the insured lender. By endorsement dated November 29, 1988, the policy was amended to change the insured lender to William L. Walde. The policy insured a deed of trust on property located in Loudoun County, Virginia.

The property was acquired in 1976 by deed from the administrators of the will of Mary J. Conrad to "D. Cecil Culbertson, Sr., Nancy F. Culbertson and Doyle C. Culbertson, Jr., Trustees." The three Culbertsons were the only beneficiaries of the purported land trust. There was no written trust agreement. The only trust agreement was verbal and was that each of the Culbertsons were to share the ownership equally, contributing equally to all obli-

gations and sharing equally in all profits. By deed of assumption dated November 10, 1988, the Culbertsons, individually and as trustees conveyed the property to "J. Eugene Wills, Trustee." The conveyance was part of a tax free exchange of real estate and acknowledged that the three Culbertsons (D. Cecil and Nancy F. were husband and wife) were the only beneficiaries of the trust mentioned in the deed from Mary Conrad's administrators. At the request of Swarek, Wills, and Cecil Culbertson, Walde made a loan in the amount of $1,700,000.00 to facilitate the exchange. The loan was secured by two deed of trust notes, each in the amount of $1,085,729.70 and each made by Wills, individually and as trustee, payable to Swarek and endorsed to Walde. The notes were secured by deeds of trust on property in Maryland and Loudoun County, Virginia. The Virginia deed of trust was insured by Chicago Title under the policy in question in this case.

Prior to agreeing to make the loan, Walde received a copy of Chicago Title's policy of title insurance to Swarek, which showed that the insured deed of trust was junior only to three deeds of trust.[1] Chicago Title committed to insure the deed of trust for Walde.

On December 8, 1987, a judgment was rendered in the Circuit Court of Fairfax County in favor of Republic Insurance Company against D. Cecil Culbertson, Nancy F. Culbertson, Samuel Glick and Marjorie Glick in the amount of $110,898.11 plus interest and costs. The judgment was recorded in the Loudoun County judgment lien docket book. Chicago Title discovered the judgment in its title examination, but did not report it nor except to it in the policy. Default occurred on the first deed of trust. The trustee gave notice that he would foreclose on the property. Walde first learned of the existence of the judg-

ment in favor of Republic Insurance Company on February 28, 1989, when he received a copy of the notice of foreclosure.[2]

Walde purchased the property at foreclosure for $2,000,000.00. In Walde's opinion, the property was worth in excess of $2,425,000.00 on the date of the sale.

On April 21, 1989, Walde's attorney, by telephone, informed Chicago Title that Walde had been the successful bidder at foreclosure and that he desired to assign his rights to purchase to Bluff Ventures, a family limited partnership he was considering forming. He received Chicago Title's assurance that it would not raise the assignment to Bluff Ventures as a defense. However, Chicago Title stated that it did not believe that Walde had any rights under the policy. On April 24, 1989, Walde formed Bluff Ventures, a Walde family limited partnership, and assigned his rights to purchase the property to Bluff Ventures.

By letter dated April 25, 1989, Walde made a claim against Chicago Title under the policy. Chicago Title, by letter dated April 28, 1989, responded that the "policy has terminated as a result of this foreclosure as no interest in that Deed of Trust is remaining. Bluff Ventures presently has no policy with Chicago Title." In May of 1989, Bluff Ventures brought suit in the Circuit Court of Loudoun County against Thomas A. Schultz, Jr., Trustee, seeking a declaration that, although the title may be subject to a judgment lien, Schultz was obligated to convey the property to Bluff Ventures and that he had no power to require that Walde or Bluff Ventures assume personal liability for the payment of the judgment. The trustee responded by filing suit, also in the Circuit Court of Loudoun County, against Bluff Ventures, Walde, and others seeking specific performance and a declaration that Bluff Ven-

1. The three deeds of trust, in order of their priority, were:

| | |
|---|---|
| Dominion Bank of Shenandoah Valley, N.A. | 196,660.00 |
| Dominion Farm Loan Corporation | 647,128.17 |
| Dominion Bank of Shenandoah Valley, N.A. | 656,905.00 |

2. The foreclosure notice stated that the property was being sold subject to "[t]hat certain judgment lien arising from docketing of that certain judgment that was obtained by the Republic Insurance Company against D. Cecil Culbertson and Nancy F. Culbertson and others...."

tures or Walde was obligated to pay the purchase price bid at foreclosure and assume primary personal liability for payment of the judgment. Both prior to and during the suit, Walde and Bluff Ventures acknowledged that the judgment constituted a lien against the property.

On June 6, 1989, Bluff Ventures sent Chicago Title copies of the Loudoun County pleadings and gave notice that Bluff Ventures "deems Chicago Title liable for costs and damages incurred as consequence of the lien, and is taking those steps it deems appropriate to protect its interests and to mitigate its damages." Walde and Bluff Ventures then settled the suits in the Circuit Court of Loudoun County with the Trustee and both suits were dismissed by decrees entered June 9, 1989. Pursuant to the settlement, Bluff Ventures assumed personal liability for payment of the judgment, Walde personally guaranteed payment of the judgment, and the trustee conveyed the property to Bluff Ventures on June 9, 1989. Chicago Title was not a party to that settlement, and we note that Bluff Ventures and Walde ended up with personal responsibility for the judgment.

Walde applied the $301,432.81 he received from the proceeds of the trustee's sale to the Wills notes which had been made payable to Swarek. As a result of the trustee's sale, the liens of the insured deed of trust and each of the prior deeds of trust were removed from the property.

Republic Insurance Company, by letter dated June 12, 1989, demanded payment from Walde and Bluff Ventures of the judgment.[3] Bluff Ventures filed a motion for judgment in the Circuit Court of Fairfax County seeking a declaratory judgment construing the terms of Chicago Title's insurance policy and contract damages for refusal to pay Bluff Venture's claim. Chicago Title removed the action to the United States District Court for the Eastern District of Virginia.

The district court entered judgment in favor of Chicago Title. It held that by the

terms of the policy Chicago Title had no liability until a final determination by a court of competent jurisdiction determined whether the judgment was a lien on the property. Such determination, it held, had been prevented by settlement of the Loudoun County suits. In addition, the court found that the contract specifically provided that Chicago Title was not liable for loss or damage when the insured voluntarily settled a claim without the prior consent of Chicago Title. Finally, the court determined that, in any event, Bluff Ventures suffered no loss.

Three issues are presented on appeal: (1) Did Walde suffer any loss?; (2) Did Chicago Title's denial of coverage excuse Bluff Venture's failure to comply with certain provisions of the contract?; and (3) Was the judgment a valid lien? We decide those issues, and remand the case for the ascertainment of damages only.

■ The principal issue on appeal is whether Walde, Bluff Venture's predecessor in interest, suffered a loss covered by Chicago Title's policy. In *Title Insurance Co. of Richmond v. Industrial Bank of Richmond,* a case indistinguishable from the one at hand, the Supreme Court of Virginia, quoting from a case involving a purchase, held that "[t]he plaintiff's loss occurred at the time it, relying on the policy, made its purchase, and is not measured by what it might realize at some future time under other conditions." 156 Va. 322, 334, 157 S.E. 710 (1931).

Chicago Title argues that the contractual language mandates a different result than the Virginia Supreme Court reached in *Industrial Bank.* We do not agree. The policy at hand states:

This policy is a contract of indemnity against actual monetary loss or damage sustained or incurred by the insured claimant who has suffered loss or damage by reason of matters insured against by this policy and only to the extent herein described.

---

**3.** At oral argument, Bluff Ventures asserted that after the district court judgment, the judgment

lien to Republic was paid.

Under the terms of the policy in *Industrial Bank,* the title insurance company

"undertook to indemnify the ... mortgagee against loss by reason of any defect in the title, unmarketability of the title, or by reason of liens or encumbrances resting upon the property ... at the date of the policy." 156 Va. at 326, 157 S.E. 710.

The policies in *Industrial Bank* and the instant case both insured against loss by reason of liens or encumbrances on the property, so we are of opinion any difference in the precise contractual language is of no significance and that Bluff Ventures' predecessor in title suffered a loss at the time he made the purchase.

Industrial Bank bought title insurance from the Title Insurance Company of Richmond. The interest of the insured was stated to be 60 notes for $37.50 each secured by a deed of trust on certain property in High Point, North Carolina. After default on the mortgage, the insured, Industrial Bank, purchased the property at the foreclosure sale for slightly less than its secured debt. Following the sale, Industrial Bank learned that ten years of street assessments had been levied on the property. Industrial Bank sold the property subject to the purchaser assuming the street assessment liens. After another foreclosure, Industrial Bank purchased the property again to protect its lien for unpaid purchase money. Following the second foreclosure, Industrial Bank first learned that the street assessments predated the policy date. Industrial Bank then sought protection and indemnity, under the terms of the policy, from the title insurer. The insurer denied coverage and Industrial Bank subsequently sold the property. *Industrial Bank,* 156 Va. at 335, 157 S.E. 710.

The Virginia Court rejected the argument that "a resale by the insured for an amount sufficient to reimburse the insured the amount of its notes insured, terminated all rights under the policy," 156 Va. at 333, 157 S.E. 710, and held that "[t]he insurer's liability became fixed when the insured relying on the policy made a bid at the first foreclosure and failed to receive the subject-matter of its purchase unimpaired by the street assessments." 156 Va. at 335, 157 S.E. 710. "When the insured gave up its notes for a title that was insured, it had reason to believe that title unimpaired. It thought it obtained an unimpaired title but it did not. At that time it suffered a loss equal to the amount of liens of the street assessments although it did not know it." 156 Va. at 334, 157 S.E. 710.

We follow the Virginia rule enunciated in *Industrial Bank.* We are of opinion that when Bluff Ventures failed to receive the subject matter of its purchase unimpaired by the judgment lien, it suffered a loss covered by the policy if the judgment is in fact determined to have been a valid lien on the property. The loss it suffered, if the lien was valid, was at least the amount necessary to pay off the prior lien.

■ The district court also held that Bluff Ventures could not recover because it had not complied with the provision of the policy that no settlement could be made without Chicago Title's consent (referring to the settlement of Bluff Ventures and Walde of the two suits in the Circuit Court of Loudoun County mentioned above).[4] Even assuming the application of the provision, Bluff Ventures argues that it was relieved of complying with that provision by Chicago Title's denial of coverage. In its April 28, 1989 letter, Chicago Title stated that "our insured's policy has terminated" and "I must deny your claim at this time," which followed a provisional denial.

In *Andrews v. Cahoon,* 196 Va. 790, 86 S.E.2d 173 (1955), the Virginia Court held that when an insurer disclaims liability under the policy, the insurer cannot later raise as a defense to a claim for indemnifi-

---

**4.** The relevant policy provision follows:

8. LIMITATION OF LIABILITY
* * * * * *
(c) The Company shall not be liable for loss or damage to any insured for liability voluntarily assumed by the insured in settling any claim or suit without the prior written consent of the Company.

cation the insured's failure to notify the insurer of a suit against the insured. In *Continental Casualty Co. v. Lindsay*, 111 Va. 389, 69 S.E. 344 (1910), the insurance company, after notifying the insured that any claim submitted would be denied, raised as a defense the insured's failure to comply with the proof of claim requirement of the policy. The court held that "[a] distinct denial of liability and refusal to pay on the ground that there is no liability is a waiver of the condition requiring proof of loss." 111 Va. at 391, 69 S.E. at 345.

Following the precedent of these Virginia cases, we are of opinion that Chicago Title's denial of coverage relieved Bluff Ventures of any duty to notify Chicago Title prior to settling its claim and that the settlement of the Loudoun County cases to which Chicago Title was not a party does not bar this claim.

The final issue concerns a determination as to whether the Republic judgment was a valid lien on the property. The policy allows for recovery only after a judicial determination of the validity of a lien.[5] The district court denied recovery, in part, because there had been no judicial determination of whether the Republic judgment constituted a lien on the property. As we have stated, there was no judicial determination because Bluff Ventures, after Chicago Title's denial of coverage, settled the matter. There is no reason to delay, and we are of opinion that a judicial determination as to the validity of the lien should be made now.

The judgment in favor of Republic against D. Cecil and Nancy F. Culbertson and Samuel and Marjorie Glick was recorded in the Loudoun County judgment lien book on December 8, 1987. The judgment was a lien on all real estate that D. Cecil and Nancy F. Culbertson possessed or were entitled to on or after December 8, 1987. See Va.Code § 8.01–458 ("Every judgment for money rendered in this Commonwealth by any state or federal court or by confession of judgment, as provided by law, shall be a lien on all the real estate of or to which the defendant in the judgment is or becomes possessed or entitled, from the time such judgment is recorded on the judgment lien docket of the clerk's office of the county or city where such land is situated....").

■ That the legal title to the property involved was held by trustees is not determinative as to whether the judgment was a lien on the property. See *Coutts v. Walker*, 2 Leigh (29 Va.) 268, 281 (1830) ("... a judgment ... [against the beneficiary of a trust] ... operat[es] [as] a lien in equity upon the equitable rights of the debtor, as it would operate upon them at law if they were legal...."). The court held with regard to judgments against the beneficiary of the trust that "... the judgments overreached the conveyances in equity, as they would at law, if the estate of *P. Coutts* [the beneficiary] in the property in question, had been legal." 2 Leigh (29 Va.) at 281. That language construes the same statute we now apply. In Virginia, "Except as otherwise provided in this section [for spendthrift trusts], all trust estates shall be subject to the debts and charges of the persons who are beneficiaries of such trusts as if those persons owned a similar interest in the trust estate." Va.Code § 55–19(A).[6] See also *Hutchinson v. Max-*

---

5. The relevant policy provision follows:

8. LIMITATION OF LIABILITY

   *   *   *   *   *   *

(b) In the event of any litigation, including litigation by the Company or with the Company's consent, the Company shall have no liability for loss or damage until there has been a final determination by a court of competent jurisdiction, and disposition of all appeals therefrom, adverse to the title or to the lien of the insured mortgage, as insured.

6. Prior to the 1989 legislative session, this section read as follows:

Estates of every kind holden or possessed in trust shall be subject to the debts and charges of the persons to whose use or to whose benefit they are holden or possessed, as they would be if those persons owned the like interest in the things holden or possessed as in the uses or trusts thereof; ... [exception for spendthrift trusts]

Va.Code § 55–17.1 (superseded). No substantive change was made to this portion of the statute by the 1989 amendment. The legislature noted that the act was declaratory of existing law. Va.Acts of Assembly, 1969, c. 600.

This provision, with minor inconsequential changes, has been a part of Virginia law since

*well,* 10 Burks (100 Va.) 169, 179, 40 S.E. 655 (1902) ("The legislation of the state shows that it was the object and policy of the legislature to make all estates, where the owners are sui juris, liable for debt, whether legal or equitable, except such as might be exempt by express statutory provisions.") The trust in the case at hand was not a spendthrift trust, therefore the interest of D. Cecil and Nancy F. Culbertson in the trust property was subject to their creditors. See *Coutts v. Walker,* 2 Leigh (29 Va.) at 280 ("the judgment creditor has a right to insist upon the execution of the trust for the satisfaction of his judgments, precisely as the debtor would have had a right to have it executed for his own benefit, if there had been no judgment.") Since the interest of D. Cecil and Nancy F. Culbertson in the property was subject to their creditors, under *Coutts* and Va.Code § 55–19(A) the Republic judgment became a lien on the property on the date the judgment was recorded.

■ Approaching the problem from another angle leads to the same conclusion for an alternate reason. Because the Culbertsons subject to the judgment, D. Cecil and Nancy F., constituted a majority of the trustees, they had control of the trust property under Va.Code § 26–5.2 ("Any power vested in three or more fiduciaries may be exercised by a majority...."); and Va.

Code § 8.01–2(3)(c) ("[T]he term ... '[f]iduciary' shall include ... trustee...."). At any time, D. Cecil Culbertson and Nancy F. Culbertson, as trustees, could have terminated the trust or conveyed the property either to themselves, as individuals, or to a third party. "If a debtor can dispose of his property interest at any time he chooses, he should be required to use that disposable interest to pay his just debts." *Jones v. Conwell,* 227 Va. 176, 183, 314 S.E.2d 61 (1984). "[A] judgment lien creditor should be allowed to 'stand in the shoes' of his judgment debtor so as to reach all assets that could be reached by the debtor." 227 Va. at 178–79, 314 S.E.2d 61. Therefore, since D. Cecil and Nancy F. Culbertson could reach the trust property, Republic was entitled to subject their interest in the trust property to the payment of its judgment. It follows that the Republic judgment was a lien on the interest of D. Cecil and Nancy F. Culbertson in the real estate involved in this case unless there be a statutory exception.

■ Chicago Title argues that ordinary trust law does not apply because the Culbertsons had created a land trust that could not be reached by creditors of the beneficiaries.[7] Even assuming that a valid land trust was created, the outcome is unchanged.[8]

1787. *Hutchinson v. Maxwell,* 10 Burks (100 Va.) 169, 178, 40 S.E. 655 (1902); Code 1919, tit. 46, ch. 208, § 5157; Code 1887, tit. 30, ch. 107, § 2429; Code 1849, tit. 33, ch. 116, § 16; 1 Revised Code of 1819, ch. 99, § 30; 12 Hennings Stat. at Large, ch. 62, p. 157.

The portion of the statute allowing spendthrift trusts was not added until 1919. Code 1919, tit. 46, ch. 208, § 5157.

7. Virginia's land trust statute reads as follows:

**§ 55–17.1. Trusts not to fail because no beneficiaries are specified by name and no duties laid on trustee; when interest of beneficiaries deemed personal property.**—No trust relating to real estate shall fail nor shall any use relating to real estate be defeated because no beneficiaries are specified by name in the recorded deed of conveyance to the trustee or because no duties are imposed upon the trustee. The power conferred by any such instrument on a trustee to sell, lease, encumber or otherwise dispose of property therein described shall be effective and no person dealing with such a trustee shall be

required to make further inquiry as to the right of such trustee to act nor shall he be required to inquire as to the disposition of any proceeds.

In any case under this section, where there is a *recorded deed of conveyance to a trustee,* the interest of the beneficiaries thereunder shall be deemed to be personal property.

Nothing in this section shall be construed (1) to affect any right which a creditor may otherwise have against a trustee or beneficiary, (2) to enlarge upon the power of a corporation to act as a trustee under § 6.1–5 or (3) to affect the rule against perpetuities.

8. We have some doubt as to whether a valid land trust was created by the Culbertsons. There is no indication in the record of the existence of a trust agreement. See *Curtis v. Lee Land Trust,* 235 Va. 491, 494, 369 S.E.2d 853 (1988) ("The land trust consists of two main documents: a trust agreement, which is not recorded executed by the beneficiaries and the trustee; and a deed of trust which is record-

In *Barnes v. VNB Mortgage Corp.*, 230 Va. 4, 334 S.E.2d 531 (1985), the Virginia Supreme Court has decided the principle involved in this case and made clear that it would not allow individuals to use the land trust statute to avoid their obligations to creditors. Barnes, the beneficial owner under a land trust agreement, attempted to avoid a due-on-sale clause by claiming that his interest was in personal property and, therefore, was separate and distinct from the property held in trust. The Supreme Court held:

> Code § 55–17.1 ... provides that "[n]othing in this section shall be construed ... to affect any right which a creditor may otherwise have against a trustee or beneficiary." To the extent, therefore, that the "deemed to be personal property" provision [of § 55–17.1] would affect the noteholder's right to invoke the due-on-sale clause against Barnes, the provision is ineffectual."

230 Va. at 10–11, 334 S.E.2d 531. See also *Williams v. First Fed. Sav. & Loan Ass'n*, 651 F.2d 910 (4th Cir.1981) (transfer of beneficial interest in land trust triggered due-on-sale clause because statutory provision deeming interest to be personal property "could not, by the express terms of the statute be 'construed ... to affect any right which a creditor may otherwise have against a trustee or beneficiary....'" 651 F.2d at 918 n. 12.).

For the same reasons as those expressed in *Barnes* and *Williams*, Chicago Title's attempt to avoid responsibility for the Republic judgment lien by claiming that the land trust statute shielded the property from the creditors of D. Cecil and Nancy F. Culbertson must fail. In Virginia, under *Barnes* (which relied in part upon *Williams*), it is clear that the land trust statute may not be used as an artifice to avoid creditors. Since the land trust statute clearly states that "[n]othing in this section shall be construed ... to affect any

right which a creditor may otherwise have against a trustee or beneficiary," Va.Code § 55–17.1, it follows that the Republic judgment was a valid lien on the property. Republic, to paraphrase the statute only slightly, clearly otherwise [than for the land trust statute] had the right to a judgment lien against the beneficiaries' (D. Cecil and Nancy F. Culbertson) property.

Judge Haynsworth, in describing a similar attempted use of a trust, aptly stated that, "One may wish to have one's cake and eat it, too, but the law need not bring the wish to fruition." *In re Robbins*, 826 F.2d 293, 295 (4th Cir.1987). D. Cecil and Nancy F. Culbertson, in their dual role as trustees and beneficiaries, had the full use and control of the property, yet sought to shield the property from their creditors. That arrangement was not different from that described by the Virginia Court "as an unacceptable bit of sophistry." *Barnes v. VNB Mortgage Corp.*, 230 Va. at 10, 334 S.E.2d 531. With the exception of spendthrift trusts, or other statutory exception, "it is against public policy that a man 'should have an estate to live on, but not an estate to pay debts with.'" *Hutchinson v. Maxwell*, 10 Burks (100 Va.) at 177, 40 S.E. 655. Therefore, the Republic judgment was a valid lien on the property and Chicago Title is liable on its policy to Bluff Ventures on account of the lien. The precise extent of damages we leave to the district court in the first instance.

The judgment of the district court is reversed and the case is remanded for a determination of the amount to be awarded to Bluff Ventures.

REVERSED AND REMANDED WITH INSTRUCTIONS.

ed."). That is not a question we decide here, however.