**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

STRAIGHT CREEK PROCESSING
COMPANY; PETER W. STROH; ELDERS
FINANCE, INCORPORATED; ESTATE OF
WALTER B. FORD, II,
Plaintiffs-Appellants,

v.

No. 95-1825

LAWYERS TITLE INSURANCE
CORPORATION,
Defendant-Appellee.

Appeal from the United States District Court
for the Western District of Virginia, at Big Stone Gap.
Samuel G. Wilson, District Judge.
(CA-94-9-2-B)

Argued: December 7, 1995

Decided: January 31, 1996

Before HALL and HAMILTON, Circuit Judges, and
THORNBURG, United States District Judge for the Western
District of North Carolina, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Daniel Robert Bieger, COPELAND, MOLINARY &
BIEGER, P.C., Abingdon, Virginia, for Appellants. James Laurent

Windsor, KAUFMAN & CANOLES, P.C., Newport News, Virginia, for Appellee. **ON BRIEF:** John E. Kieffer, Beth O. Skinner, WOOD-WARD, MILES & FLANNAGAN, P.C., Bristol, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Straight Creek Processing Company (Straight Creek) **1** brought this breach of contract action against Lawyers Title Insurance Corporation (Lawyers Title), alleging that Lawyers Title breached its obligations under a title insurance policy.**2** The district court granted summary judgment in favor of Lawyers Title. For the reasons stated below, we affirm.

I.

In 1981, Millers Cove Energy Company (Millers Cove) purported to convey to Straight Creek a parcel of land (the Property) located in Lee County, Virginia. Lawyers Title issued a title insurance policy (the Policy) that insured Straight Creek's title to the Property. In 1986, Straight Creek learned that Millers Cove may not have had title to the Property at the time it purported to convey the Property to Straight Creek.

_____

**1** Straight Creek has assigned portions of the proceeds it may receive in this action to the other appellants, Peter W. Stroh, the Estate of Walter B. Ford, II, and Elders Finance.
**2** Jurisdiction was based on diversity of citizenship. See 28 U.S.C. § 1332(a)(1).

In a letter dated April 11, 1991, Straight Creek gave Lawyers Title notice of a claim under the Policy. The letter informed Lawyers Title that a title "discrepancy" existed (J.A. 482), that Straight Creek was attempting to sell the Property, and that the sale was contingent on Straight Creek's delivering clear title. Thereafter, Straight Creek notified Lawyers Title of a proposed settlement agreement with a group of persons asserting an ownership interest in the Property. Straight Creek and Lawyers Title then exchanged letters regarding whether Straight Creek's claim was covered under the Policy. Sometime between May 29, 1991, and June 6, 1991, Straight Creek entered into a settlement agreement in which it agreed to pay $300,000 to the group of alleged adverse owners. On June 12, 1991, Lawyers Title notified Straight Creek that the claim was not covered under the Policy.

Straight Creek subsequently brought this action against Lawyers Title in the United States District Court for the Western District of Virginia, seeking to recover the $300,000 under the Policy. The district court granted summary judgment in favor of Lawyers Title, concluding that Straight Creek's violation of three provisions of the Policy precluded Straight Creek's recovery under the Policy. This appeal followed.

II.

We review the grant of summary judgment de novo . Cooke v. Manufactured Homes, Inc., 998 F.2d 1256, 1260 (4th Cir. 1993). Summary judgment is appropriate when, viewed in the light most favorable to the nonmoving party, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see Cooke, 998 F.2d at 1260. A nonmoving party will survive a motion for summary judgment only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

III.

Because this is a diversity case, we apply the substantive law of Virginia, the state where the action was brought, see Erie R.R. v.

3

Tompkins, 304 U.S. 64, 78-80 (1938), including Virginia's choice-of-law rules. See Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941). In Virginia, the interpretation of a contract is governed by the law of the place where the contract was made. Woodson v. Celina Mut. Ins. Co., 177 S.E.2d 610, 613 (Va. 1970). The Policy, which is the contract at issue here, was made in Virginia. Therefore, Virginia law governs its interpretation.

Under Virginia law, an unambiguous contract controls the rights of the parties to the contract. See D.C. McClain, Inc. v. Arlington County, 452 S.E.2d 659, 662 (Va. 1995) ("[T]he contract becomes the law of the case unless the contract is repugnant to some rule of law or public policy."). Therefore, we enforce unambiguous provisions of contracts, including insurance policies, as they are written. State Farm Fire & Casualty Co. v. Walton, 423 S.E.2d 188, 191 (Va. 1992).

Here, the Policy unambiguously provides, "No claim shall arise or be maintainable under this policy . . . for liability voluntarily assumed by an insured in settling any claim or suit without prior written consent of [Lawyers Title]." (J.A. 389). Straight Creek admits that it settled the claim without Lawyers Title's prior written consent. Thus, under the terms of the Policy, Straight Creek cannot recover the settlement amount. Straight Creek contends, however, that it was relieved of its duty to obtain Lawyers Title's prior written consent to the settlement agreement for two reasons: (1) Lawyers Title denied coverage on the claim; and (2) Lawyers Title acted unreasonably in its handling of the claim. We shall address each of these contentions in turn.

A.

Straight Creek argues that it was relieved of its duty to obtain Lawyers Title's prior written consent to the settlement agreement because Lawyers Title denied coverage on the claim. As support for this argument, Straight Creek relies on Bluff Ventures Ltd. Partnership v. Chicago Title Ins. Co., 950 F.2d 139 (4th Cir. 1991). We find this reliance to be misplaced.

In Bluff Ventures, an insured made a claim under a title insurance policy. The insurer responded by informing the insured that the policy

4

had terminated and that the claim was denied. The insured subsequently entered into settlement agreements without obtaining the insurer's consent, although the policy required the insurer's consent to any settlement agreement. When the insured later attempted to recover under the policy, the insurer raised the settlement agreements as a defense. Under these circumstances, we held that the insurer's denial of coverage on the claim relieved the insured of its duty to obtain the insurer's consent before entering into any settlement agreement. Id. at 143-44.

In Bluff Ventures, the insurer denied coverage before the insured settled the claim. It would have been pointless to require the insured to get consent from the insurer when the insurer had already stated that no coverage existed under the policy. Here, in contrast, Lawyers Title did not deny coverage until after Straight Creek settled the claim. Straight Creek settled the claim sometime between May 29, 1991, and June 6, 1991, and Lawyers Title denied coverage on June 12, 1991. Because Lawyers Title did not deny coverage until after Straight Creek settled the claim, Straight Creek was not relieved of its duty to obtain Lawyers Title's prior written consent to the settlement agreement.

B.

Straight Creek also contends that it was relieved of its duty to obtain Lawyers Title's prior written consent to the settlement agreement because Lawyers Title acted unreasonably in its handling of the claim. Straight Creek argues that although it notified Lawyers Title of the settlement negotiations three times, Lawyers Title refused to participate in settlement negotiations and used stalling tactics to delay or avoid settling the claim. Assuming that such conduct on behalf of Lawyers Title would justify Straight Creek in settling the claim without Lawyers Title's prior written consent, Straight Creek's argument still fails because there is no evidence on which a reasonable jury could find that Lawyers Title stalled or refused to participate in settlement negotiations.

Straight Creek first notified Lawyers Title of the claim and of the proposed sale of the Property by a letter dated April 11, 1991. Lawyers Title responded on April 22, 1991, with a letter informing

5

Straight Creek that the claim had been assigned to a claims attorney for investigation.

On May 9, 1991, Straight Creek sent Lawyers Title a proposed settlement agreement. In a letter dated May 14, 1991, Lawyers Title requested further details regarding the settlement agreement and the proposed sale. This letter acknowledged that time was of the essence and asked that the requested information be forwarded to Lawyers Title as soon as possible, so that Lawyers Title could determine whether coverage existed.

On May 29, 1991, Straight Creek sent Lawyers Title a letter stating that the proposed sale of the Property must occur no later than June 9, 1991, and that Straight Creek had to complete the settlement before consummating the sale. Lawyers Title wrote back the next day and informed Straight Creek that its claim would be discussed at a meeting to be held on May 31, 1991.

On June 2, 1991, Lawyers Title requested additional information from Straight Creek. Having failed to receive this requested information, Lawyers Title requested it again in a letter dated June 6, 1991. The June 6, 1991 letter explained that Lawyers Title had to review the requested information before it could determine whether coverage existed. Sometime between May 29 and June 6, Straight Creek settled the claim.

The correspondence between Lawyers Title and Straight Creek shows that Lawyers Title reasonably handled the claim. Lawyers Title promptly responded to Straight Creek's letters, assigned a claims attorney to the claim, and began investigating the claim. Lawyers Title did not stall or refuse to participate in settlement negotiations; it simply attempted to obtain information from Straight Creek so that it could determine whether coverage existed and whether the settlement agreement was acceptable.

IV.

In summary, Straight Creek, in violation of the Policy, settled the claim without prior written consent of Lawyers Title. Under the terms

6

of the Policy, the violation of this Policy provision precludes Straight Creek from recovering the settlement amount. Therefore, the district court properly granted summary judgment in favor of Lawyers Title.

Having determined that summary judgment was properly granted because Straight Creek violated the Policy provision requiring Lawyers Title's prior written consent before settling a claim, we need not consider the other violations of Policy provisions found by the district court.

<u>AFFIRMED</u>

7