## Richmond.

HUTCHINSON AND OTHERS v. MAXWELL AND OTHERS.

January 30, 1902.

1. SPENDTHRIFT TRUSTS—*Life Estates—Liability for Debts.*—Liability for debts and the power of alienation are inseparable incidents of a life estate, legal or equitable, in a party who is *sui juris*, except where there is a termination or limitation over of the estate dependent upon attempted alienation or seizure by creditors; and all conditions in restraint of such incidents are repugnant and void. Whatever rights, legal or equitable, a debtor who is *sui juris* has in property, his creditor may subject, unless exempt by statute, or so intimately connected or blended with the rights of others that they cannot be subjected without prejudice to the latter's rights. In this state equitable estates are, by express provision of statute, liable for debts to the same extent as legal estates. Code, sec. 2428. *Garland* v. *Garland*, 87 Va. 758, criticised.

2. SPENDTHRIFT TRUSTS—*Maintenance—Discretion of Trustee—Rights of Creditor.*—Although trustees may be invested with discretion as to what portion of the income from a trust fund shall be applied to the maintenance and support of a debtor, yet if they cannot exclude him altogether, his assignee and creditors may demand from the trustees whatever amount he could have compelled them to have applied for his benefit.

3. CHANCERY PRACTICE—*Trust Property—Lien Creditor's Bill—Remedy at Law.*—Although a bill to subject trust property of a debtor who is *sui juris* can only be filed by a creditor having a lien thereon, yet a bill filed by a lien creditor on behalf of himself and all others who *may be entitled* to become parties, sufficiently shows that it is filed on behalf of lien creditors only. Such bill need not aver that the complainant has exhausted his remedy at law.

4. CHANCERY PRACTICE—*Bill and Exhibits—Certainty of Charges.*—If a

bill, when read in connection with exhibits filed and made a part thereof, states the case with such a degree of certainty and consistency as will enable the defendant to make defence and the court to decree upon the case made, it is sufficient.

5. CHANCERY PRACTICE—*Amended Bill—Multifariousness.*—Where it is apparent from the whole scope of an amended bill that it was intended to accomplish the same object for which the original bill was filed, the bill, as amended, will not be deemed multifarious, although there may be particular charges in the amended bill apparently intended to base relief on a different ground from that stated in the original bill.

Appeal from a decree pronounced by the Corporation Court of the city of Winchester, September 30, 1898, in a suit in chancery wherein appellants were the complainants, and the appellees were the defendants.

*Reversed.*

The opinion states the case.

*S. J. C. Moore, C. Kownslar, M. McCormick* and *R. M. Ward,* for the appellants.

*Barton & Boyd,* for the appellees.

BUCHANAN, J., delivered the opinion of the court.

This suit was instituted to reach and subject the rights and interests of Clark Maxwell, the debtor, in certain real and personal estate conveyed by his wife to a trustee, to the payment of the debts of the appellants which had been reduced to judgment, and upon which execution had issued.

The object of the conveyances of the wife to the trustee was, as is stated in the deeds, to provide "an estate and fund for the maintenance, support, and enjoyment of the said Clark Maxwell, the husband of the said party of the first part, at the same time securing the same against his improvidence, without being alienable by him or in any wise subject to, or chargeable with, his past, present, or future debts or liabilities."

The estate conveyed to Scott H. Hansbrough, trustee, by one of the deeds, consisted of horses, wagons, carts, harness, silverware, pictures, &c.; and the right to the use and occupation of, and to the rents and profits arising from, a certain farm lying in part in the county of Clarke, and partly in the county of Frederick, containing three hundred and thirty-three acres, during the natural life of the husband, reserving to the grantor the remainder in the farm.

The estate conveyed by the other deed consisted, first, of one-half in value, or a moiety, of the capital or principal sum of all the properties, moneys, investments, choses in action, and estate, real, personal or mixed, in the charge, custody and management of one George M. Saunders, of London, England, the attorney and agent of the wife; and second, the net income, rents, profits and interest arising out of and derived from the other moiety of the property held by said agent and attorney during the life of the husband. The estate or interest of the husband in the horses and other personal property conveyed by the first-named deed is limited as follows: "The said Scott H. Hansbrough shall, immediately upon the execution and delivery of this indenture, take possession of the personal property aforesaid mentioned in clause one, and hold the same as trustee aforesaid, free from all debts or liabilities of the said Clark Maxwell, and without any right or power in the said Clark Maxwell to dispose of, alien, or charge or encumber the same, but for the free use and enjoyment of said Clark Maxwell, as provided in the trust herein contained, with power only to said trustee to sell and dispose of the same when and as he may see fit in accordance with and for the purposes of the trust herein established."

As to the farm, the deed provides that the trustee, "out of the rents and profits arising from said farm after paying all taxes, insurance, and necessary expenses of administering said trust, shall apply the same so far as is necessary in his discretion

and judgment to the proper and comfortable support and maintenance of said Clark Maxwell, paying therefrom from time to time, or from week to week, only so much of said rents and profits, proportionately in such sum or sums as to said trustee may seem proper to be paid; without the right or power of said Clark Maxwell to assign or anticipate the same; and any residue thereof, remaining after the payment of said taxes, costs of insurance and other expenses aforesaid, and the said support and maintenance of said Clark Maxwell, shall be safely invested from time to time by said trustee as other trust funds are required by law to be invested and held in trust, as a capital sum.

"The annual interest or income from which shall be expended for the maintenance and support of said Clark Maxwell as aforesaid, and such capital sum shall, at or after the death of said Clark Maxwell, be paid to such person or persons as said Clark Maxwell shall nominate and appoint by his last will and testament, and in default of such appointment, the same shall pass and belong to the heirs at law of said Clark Maxwell."

By the terms of the other deeds which convey the property in the hands of Saunders, agent and attorney, it is provided that the property thereby conveyed shall be held in trust "and free from the control and ownership and power of said Clark Maxwell and his assigns, and in no respect or manner subject to any contract, debt or liability of said Clark Maxwell, but upon the further trust that, out of so much of said income, rents and profits as in the discretion and judgment of said trustee shall be necessary therefor, the said trustee shall provide for the proper and comfortable support of said Clark Maxwell, payable to or for the said Clark Maxwell from week to week, or from time to time, proportionately so much of said income, rents and profits in sum or sums as may to said trustee seem proper to be paid therefor; and any residue thereof not so expended by said trustee shall be by him safely invested from time to time and held in trust as a capital sum, along with the aforesaid capi-

tal or principal sum derived from the moiety of said properties, money, etc." . . . . . It further provides that "the said trustee, upon the death of said Clark Maxwell, shall pay the principal sum in his hands to such person or persons as Maxwell shall nominate and appoint by his last will, and in default of such appointment, the same shall pass and belong to his (Maxwell's) heirs at law."

Upon appellant's contention, two questions arise:  1st, Whether the interest or estate conveyed by the deeds was a gift, or was based upon a valuable consideration; 2d, If a gift, whether or not the provisions of the deeds, that it should not be liable for the donee's debts, are void, because repugnant to the nature of the estate conveyed.

If the conveyances were based upon a valuable consideration, the second question does not arise, as it is conceded by appellees' counsel that if the *cestui que trust* paid a consideration for the property conveyed, the provisions of the deed that it should not be liable for his debts would be a fraud upon the rights of his creditors, and could not be upheld.

The deeds in question, upon their face, purport to convey the estate or interest which passes to the grantee as gifts, and the record does not show that the conveyances were based upon considerations deemed valuable in law.

Being gifts, the next question is, are the provisions of the deeds, declaring that the donee's estate or interest therein should not be liable for his debts, void?

It is conceded that the question of the liability for debt of a *cestui que trust's* interest in property, out of the income of which he is to be supported for life, had not been passed upon by this court prior to the case of *Garland* v. *Garland*, 87 Va. 758. Numerous cases had been before this court in which trusts making somewhat similar provisions were involved, but they were either cases in which it was not necessary to pass upon the question now under consideration, or cases where the

provisions were for the benefit of two or more beneficiaries, and the question was whether or not their interests could be severed, or whether they were so connected that no part of the trust fund could be reached for the debts of any one of them. Among these cases are *Markham* v. *Guerrant*, 4 Leigh, 279; *Nickell* v. *Handly*, 10 Gratt. 336; *Camp* v. *Cleary*, 76 Va. 140.

But it is claimed that in the case of *Garland* v. *Garland*, 87 Va. 758, the validity of such trusts was upheld, and that the question is no longer an open one in this State.

The opinion of the court in that case does so hold, but the construction which the court placed upon the will did not, we think, require a decision of the question. It construed the will as giving to the testator's brother, Burr Garland, the mere right to a decent and comfortable support out of the profits of an estate, the legal title to which, as well as the profits, he (the testator) was careful to confer upon the trustee. Burr Garland was dead, and the property sought to be subjected were profits unexpended at the time of his death.

Having placed this construction upon the will, the court says: "On behalf of the appellees it is insisted that the testator, by his will, gave to Burr Garland the profits therein mentioned absolutely, and that the exemption of the profits from liability for Burr Garland's debt is void, because they say it is a fundamental doctrine of the English chancery, and that the same rule prevails in America, that no such estate can be deprived of the incident of alienability or liability for the debts of the owner.

"But this argument seems to me to be beside the mark. In this case the devisee and legatee, Burr Garland, did not take any absolute property in the profits of the estate which he might have assigned or aliened, but on the contrary, he acquired the mere, although exclusive, right to a perception of so much of said profits as would furnish a decent and comfortable support for himself, and this was so qualified and limited as to fence out all his creditors except those who furnished him supplies for

his support. Had he undertaken to expend these profits in any other way, he would have been guilty of a breach of trust, for there was, in the eye of a court of equity, as complete a trust in him to apply these profits in this one direction as there was in the trustee to hold the legal title. And while he, Burr Garland, took this qualified right, which we think it is a misnomer to call property, the remaindermen took a vested remainder in all the surplus or unexpended profits."

If Burr Garland acquired no property rights under the will of his brother in the profits sought to be subjected in that case, as the court in effect held, then there was of course nothing for his creditors to subject, and there was no necessity or occasion for the court expressing any opinion upon the validity or invalidity of such provisions where the *cestui que trust* did take a property interest under the trust. That expression of opinion was, therefore, a mere *dictum*, and cannot be regarded as an authoritative decision of the question under consideration.

It is well settled in this country and in England, from which country we derive the principles of our jurisprudence, that a gift or grant of a beneficial estate, in fee or absolutely, whether legal or equitable, has certain legal incidents of which the estate cannot be divested, and all conditions adopted for that purpose are necessarily repugnant and void. Among those incidents are, the donee's or grantee's power of alienating such estate, and its liability for his debts. Coke upon Litt., 223a; *Brandon* v. *Robinson*, 18 Vesey, 429; 2 Minor's Inst. (4th ed.) 287-8; Gray's Restraints on Alienation (2d ed.), secs. 105 and 134.

The reasons for this doctrine or principle is the repugnancy of such restraints upon the ordinary rights of property, and that property would thereby be withdrawn from the ordinary rules and channels of commerce and trade.

In Coke upon Litt., p. 223a, in discussing conditions against alienation, it is said: "The like law is of a devise in fee upon condition that the devisee shall not alien, the condition is void;

and so it is of a grant, release, confirmation, or any other conveyance, whereby a fee simple doth pass. For it is absurd and repugnant to reason that he *that hath no possibility to have the land revert to him* should restrain his feoffee in fee simple of all his power to alien. And so it is if a man be possessed of a lease for years, or of a horse, or of any other chattel, real or personal, and give or sell his whole interest or propertie therein, upon condition that the donee or vendee shall not alien the same, the same is void, because his whole interest and propertie is out of him, so as he hath no possibilitie of a reverter; and it is against trade and traffique and bargaining, and contracting between man and man."

The case of a settlement upon a married woman, or in reference to coverture, is an exception, or apparent exception, to the general rule that conditions restraining the power of alienation and exempting property from the liability for the debts of the owner is repugnant and void. But the whole doctrine of the equitable separate estate of a married woman is the creature of equity, the invention of the Chancellors, and sets at naught many of the principles of the common law. 2 Minor's Inst. (4th ed.), 948.

"When this court," said Lord Cottonham in *Tullett* v. *Armstrong*, 4 Myl. & Cr. 377, "first established the separate estate, it violated the laws of property as between husband and wife; but it was thought beneficial, and it prevailed. It being once settled that a wife might enjoy separate estate as a *femme sole*, the laws of property attached to this new estate; and it was found, as part of such law, that the power of alienation belonged to the wife, and was destructive of the security intended for it. Equity again interfered, and by another violation of the law of property supported the validity of the prohibition against alienation." *Buckton* v. *Hay*, 11 Chy. Div. 645.

It is also well settled in England that the right of alienation and liability for debts are inseparable incidents of a life estate,

whether limited by way of trust or otherwise, except in cases
where there is a termination, or limitation over, of the estate
dependent upon attempted alienation or seizure by creditors.
*Brandon* v. *Robinson,* 18 Vesey, 429; *Graves* v. *Dolphin,* 1 Sim.
66; *Rockford* v. *Hackman,* 9 Hare, 475; Gray on Restraints on
Alienation of Property, sec. 134.

It is also equally well settled in this country, even in those
jurisdictions where "spendthrift trusts" are upheld, that liability
for debts is an inseparable incident of a *legal* life estate. In the
case of *Hahn* v. *Hutchinson,* 159 Pa. St. 138, 139, the Supreme
Court of Pennsylvania, where such trusts seem to have had
their origin, held, following prior decisions, that "in order to
protect the estate from creditors, the legal estate must be in the
hands of a trustee, and if the equitable estate become merged in
the legal it could be immediately seized in execution by the
creditors." Professor Gray, who has given this subject the
most thorough investigation, in his work on Restraints on Aliena-
tion, says there is not a shred of authority, on either side of
the Atlantic, in favor of the doctrine that a life tenant of the
legal estate in land can be restrained from alienation. Secs.
138, 134. In our investigation, we have found no case holding
a contrary doctrine, unless it be some Illinois cases referred to
by Professor Gray. At least, the overwhelming current of
authority is that a legal life estate is subject to the legal inci-
dents of property, one of which is that it is liable for the
owner's debts. *Ehrusman* v. *Senor,* 162 Pa. St. 577; *Willing-
ham* v. *Janrin,* 60 N. H. 174; *McCleary* v. *Ellis,* 54 Iowa, 311;
*Maynard* v. *Cleaves,* 149 Mass. 307.

If liability for debts is an inseparable incident of a legal life
estate, as it unquestionably is, why should it not be an insep-
arable incident of a like estate in equity? One reason why it
is an inseparable incident of property at common law is, that
it is against public policy that a man "should have an estate to
live on, but not an estate to pay debts with." Does not this

reason apply as much to equitable estates as to legal? A restraint on alienation and freedom from liability for debt are as much against public policy in the one case as in the other. The English chancery courts recognized this, and applied the rule of the common law to equitable estates. They did not engraft any new doctrine on the common law, as is suggested in some of the cases which uphold spendthrift trusts; but, as Professor Gray shows conclusively, "they walked scrupulously in the ancient ways of the law; and it is these late cases which have departed from the principles of the common law as much as they have from the precedents in equity." "The common law," as he says, "held that legal estates of freehold, whether in fee-simple or for life, should not be inalienable; and chancery held the same of equitable estates of freehold. The common law held that a legal life estate might be made determinable on alienation; and chancery held the same of an equitable life estate." Sec. 256.

Not only did courts of equity, in the furtherance of a wise public policy, recognize the fact that equitable as well as legal estates should not be withdrawn from commerce, and should be liable for the obligations of the owner, but at an early day, very soon after we had severed our connection with the mother country, the law-making power of this State, by an act regulating conveyances, which went into effect January 1, 1787, and which, with some verbal changes, is found in sec. 2428 of the Code of 1887, declared that "Estates of every kind, holden or possessed in trust, shall be subject to debts and charges of the persons to whose use or to whose benefit they are holden or possessed, as they would be if those persons owned the like interest in the things holden or possessed, as in the uses or trusts thereof." 12 Hennings Stat. at Large, ch. 62, p. 157; 1 Rev. Code of 1819, ch. 99, sec. 30.

This statute makes the equitable estate of the *cestui que trust* liable for his debts to the same extent as if he were the legal

owner of the same. If a condition is annexed to a legal life estate that it shall not be liable for the owner's debts, it is void. Why, then, is not a like condition annexed to an equitable life estate void also?

The legislation of this State shows that it was the object and policy of the Legislature to make all estates, where the owner is *sui juris,* liable for debt, whether legal or equitable, except such as might be exempt by express statutory provisions. The effect of upholding spendthrift trusts would be to encourage idleness and lessen enterprise, and to foster a class who become more and more reckless and indifferent to their honest debts from a sense that they are hedged in by the law beyond the reach of their creditors.

The decisions of the American courts upon this question are conflicting, and the reasoning of the cases which uphold spendthrift trusts is unsatisfactory, and, as it seems to us, at war with well settled principles of law as to the incidents of property, whilst the English courts of chancery, and the American cases which follow them (even if our statute did not make a debtor's equitable property liable for his debts to the same extent as if he were the legal owner), seem to us to be sustained by the better reason, and to be in furtherance of a wise public policy. Whatever rights, whether legal or equitable, a person *sui juris* has in property, ought to be, and we think are, liable for his debts except so far as exempt therefrom by statute. Whatever rights of property the *cestui que trust* can demand from his trustees, his creditors ought to have the right to subject to the payment of their debts unless his rights are so connected or blended with the rights of others that it cannot be subjected without prejudice to the latter's rights. *Nickell, &c.* v. *Handly, &c.,* 10 Gratt. 336, 339.

Having reached this conclusion, the provisions in the deed of Mrs. Maxwell must be held to be void in so far as they declare that the property rights which her husband acquired under the deeds shall not be liable for his debts.

The next question is, what rights of property did the husband acquire by the deeds?

By the first mentioned deed, filed with the bill and marked "Exhibit B," he acquired an absolute equitable estate in the horses and other personal property described in clause numbered one of that deed, or in the proceeds thereof, in the event the trustee sold the same, as he had authority to do under the provisions of the deed. Under that deed, and the other deed filed with the bill, marked "Exhibit C," he was entitled to what, in the judgment and discretion of the trustee, would be a proper and comfortable support and maintenance out of the rents and profits of the farm conveyed by the first-named deed, and out of the income, rents and profits of the property conveyed by the second-named deed, after paying taxes, insurance and necessary expenses of administering the trust, and which were made prior charges upon the profits and income received by the trustee from the farm, and from the property conveyed by the other deed. And the husband was further entitled, under the provisions of the first-named deed to the annual interest or income on so much of the rents and profits of the farm as were not necessary for the said proper and comfortable support and maintenance of the husband, and which the trustee was required by the deed to invest as a capital sum or interest bearing fund.

We are of opinion, therefore, that the appellants have the right to have subjected to the payment of their debts, so far as may be necessary, the horses and other personal property conveyed by clause numbered one of the deed marked "Exhibit B" and filed with the bill, or the proceeds thereof if that property has been sold by the trustee; and, so much of the rents, profits and income derived by the trustee from the other property conveyed by, and also in the fund invested under, the two deeds, after paying the prior charges of taxes, insurance, etc., charged thereon, as the husband would be entitled to receive for his proper and comfortable support and maintenance under the provisions of the said deeds.

It is true, there is a discretion vested in the trustee by the deeds as to what amount of the rents, profits and income arising from the property conveyed shall be applied to the husband's support and maintenance, but it seems to be settled that where trustees are directed to apply the income of a trust fund for the support and benefit of the debtor, and for other purposes, but have no right to exclude the debtor, then the assignee and the creditors can claim from the trustee the amount which the debtor could have claimed should have been applied to his benefits. *Page* v. *Way*, 3 Beav. 20; *Kearsley* v. *Woodcock*, 3 Hare, 185; *Rippon* v. *Norton*, 2 Beav. 63; *Wallace* v. *Anderson*, 16 Beav. 533, and Gray on Restraints on Alienation, 159.

Upon cross-appeal, the action of the court in overruling the demurrer to the bill and amended bill is assigned as error by the appellees.

The first objection is that the bill was filed in behalf of all creditors, when it could be filed only on behalf of all lien creditors.

The bill is in behalf of complainants and "in behalf of all creditors of Clark Maxwell, who *may be entitled* to become parties to this suit." As only lien creditors were entitled to become parties to the suit—*Armstrong, &c.,* v. *Pitts*, 13 Gratt. 235, 243—the bill must be construed as showing on its face that it was filed in behalf of such creditors only. · The complainants were lien creditors, and none other than lien creditors became parties to the suit.

The next objection urged to the bill is that it alleges that the complainants had sued out execution and obtained a lien upon the property sought to be subjected, without showing that they had exhausted their remedy at law.

It was necessary, under decision of *Armstrong* v. *Pitts, supra,* that the creditors should have a lien upon the property sought to be subjected before they could come into a court of equity, but it was not necessary that they should have alleged a return

of no property found upon the executions as a condition precedent to filing their bill. *Freedman's Saving Trust Co.* v. *Earle*, 110 U. S. 710 (Book 28 L. C. P. Co. 301, 303); Lewin on Trusts, 795.

The third objection is that its allegations are indefinite and uncertain. The bill, when read in connection with the exhibits filed, and which are made a part of it, is not, in our opinion, subject to the objection made, but states the complainants' case with such a degree of certainty and consistency as would enable the defendants to make defence, and the court to decree upon the case made, and that is sufficient.

The fourth ground of demurrer is that the bill and amended bill are multifarious.

The object of the original bill was to subject the interest of the debtor in the trust subject to the payment of his debts, notwithstanding the provisions of the deeds creating the trust declared that it should not be so liable, upon the ground that such provisions were void. In addition to the facts alleged in the original bill, the amended bill alleges that the interest of the debtor in the trust subject was not a gift, but that the deeds conveying it were founded upon a valuable consideration. The amended bill, it is true, further alleges that the property settled by the wife upon the debtor husband had been originally conveyed by him to her with all his other property, and that these conveyances of the husband to the wife and afterwards of the wife for the benefit of the husband were executed in pursuance of a plan to hinder, delay, and defraud the creditors of the husband; but in the same paragraph in which that allegation is made, it is alleged that the deeds of the wife vest in the husband the equitable title to all the property conveyed to the trustee, in trust for the former's use and benefit and that such equitable interests are subject to, and liable for, the payment of his debts. It is apparent from the whole frame and scope of the amended bill that it was not filed to have the deeds in

question set aside and annulled upon the ground that they were made to hinder, delay, and defraud the creditors of the husband, but to subject the debtor's interest in the trust subject to the payment of his debts, the same object for which the original bill was filed.

We are of opinion that there was no error in the court's overruling the demurrer to the bill and amended bill upon either of the grounds assigned.

The decree appealed from must be reversed, and the cause remanded to the Corporation Court for further proceedings to be had in accordance with the views expressed in this opinion.

*Reversed.*