PRESENT: All the Justices

GREER P. JACKSON, JR., ESQ., ADMINISTRATOR,
D.B.N, C.T.A., AND SUBSTITUTE TRUSTEE FOR THE
ESTATE OF GERTRUDE PIERCE WORTHINGTON

OPINION BY
v.  Record No. 041308              JUSTICE G. STEVEN AGEE
                                   March 3, 2005
FIDELITY AND DEPOSIT COMPANY OF MARYLAND


FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Randall G. Johnson, Judge

Greer P. Jackson, Jr., Esq., Administrator, d.b.n., c.t.a.
and Substitute Trustee for the Estate of Gertrude Pierce
Worthington (the "Trustee") appeals from the judgment of the
Circuit Court of the City of Richmond which subjects the Trustee
to garnishment for the debts of a spendthrift trust beneficiary.
For the reasons set forth below we will reverse the judgment of
the trial court.

I. BACKGROUND AND PROCEEDINGS BELOW

Gertrude Pierce Worthington (Gertrude) died testate on
August 6, 2000.  Gertrude's will divided her residuary estate,
which was the bulk of her estate, into two testamentary trusts
for her sons.  Seventy-five percent of the residuary estate
would be held in trust for Craig W. Worthington (Craig's Trust).
The remaining twenty-five percent would be held in trust for
Bradford N. Worthington (Bradford's Trust).[1]

_____

[1] The will established a trust for a portion of the
residuary estate for Gertrude's husband, Norman W. Worthington,

Bradford qualified as administrator of Gertrude's estate after the named fiduciaries declined to serve. Fidelity and Deposit Company of Maryland (Fidelity) executed a bond in the amount of $ 296,000 as corporate surety for the faithful discharge by Bradford of his duties as administrator.

Without approval by a court or authority under Gertrude's will, Bradford took estate funds to invest in his personal business, a breach of his fiduciary duties as administrator. Bradford failed to file fiduciary accountings as required by law or return the misappropriated funds to the estate. The Commissioner of Accounts for the City of Richmond filed a petition to remove Bradford as administrator of Gertrude's estate and to forfeit the bond. After a hearing, the trial court removed Bradford as administrator of the estate and ordered him to file a final accounting. The trial court stayed consideration of forfeiture of the bond until Bradford filed a final accounting and the Commissioner of Accounts filed a final report. The Trustee was appointed by the trial court as

---

if he survived her. It does not appear from the record that he did survive Gertrude and nothing in the record indicates such a trust was established. In any event, that factor has no bearing on the issues in this appeal.

administrator d.b.n.c.t.a. of Gertrude's estate and trustee of the testamentary trusts.[2]

Bradford never filed an accounting and Fidelity paid the amount of $127,808.60 to the Trustee as administrator of Gertrude's estate representing the entire amount of Bradford's defalcation and costs and making the estate whole.  The trial court entered an order relieving Fidelity of its obligations as surety and awarding Fidelity a judgment against Bradford in the amount of $127,808.60, plus interest.  Fidelity obtained a writ of fieri facias and instituted a garnishment proceeding against the Trustee to seize funds in Bradford's Trust in partial satisfaction of the judgment against Bradford.

Fidelity filed a motion to require the Trustee to show cause why he had not answered the garnishment summons.  In response, the Trustee alleged that Gertrude's will created a spendthrift trust for Bradford's benefit and, therefore, trust funds could not be paid to a creditor of any beneficiary of such a trust.

The trial court conducted a hearing on the show cause motion and ultimately ruled "that a spendthrift trust was

---

[2] The Trustee succeeded Karen E. Dunivan, who was originally appointed as Administrator to replace Bradford but was removed due to a conflict of interest.

3

created for Bradford" under Gertrude's will.[3]  Nonetheless, the trial court held that Bradford's interest in Bradford's Trust in the hands of the Trustee could be garnished to satisfy Bradford's debt to Fidelity.  The trial court based its judgment on two grounds.  First, it opined that Gertrude intended Bradford's Trust to have less spendthrift protection than Craig's Trust.  Second, the trial court concluded there was a public policy exception to spendthrift protection if that would "allow one beneficiary, through his or her misconduct, to deprive the other beneficiaries of their entitlements."

We awarded the Trustee this appeal.

## II. ANALYSIS

A spendthrift trust is a trust created for the maintenance or benefit of a beneficiary which is secured against his improvidence, placing it beyond the reach of his creditors.  See Alderman v. Virginia Trust Co., 181 Va. 497, 512-13, 25 S.E.2d 333, 340 (1943).  Accord In re Wilson, 3 Bankr. 439, 444 (Bankr. W.D. Va. 1980).  In Virginia, spendthrift trusts are authorized by statute.  See Code § 55-19.

---

[3] The trial court initially ruled that Bradford's Trust was not a spendthrift trust.  However, the Trustee moved for reconsideration, and the trial court changed its ruling. Fidelity did not assign cross error to this finding of the trial court so its argument that Bradford's Trust is not a spendthrift trust will not be considered.  Rule 5:17(c).

4

> Spendthrift trusts, not repugnant to the law, are allowed to give effect to the will of the donor and not because of any special consideration for the donee. . . . Any conveyance whether by operation by law or by act of any of the parties, which disappoints the purposes of the settlor by diverting the property or the income from the purposes named, would be a breach of the trust.

Alderman, 181 Va. at 518, 25 S.E.2d at 342 (citation and internal quotation marks omitted).

Article VIII of Gertrude's will provides, in pertinent part, as follows:

> To the extent permitted by law, the principal and income of any trust shall not be liable for the debts of any beneficiary or subject to alienation or anticipation by a beneficiary, except as otherwise provided. Neither Norman William Worthington, Craig William Worthington, or any other beneficiary of any other trust under this agreement shall have the right to anticipate, sell, assign, mortgage, pledge or otherwise dispose of or encumber all or any part of the trust estate nor shall any part of the trust estate including income, be liable for the debts or obligations of any kind of the Beneficiary or be subject to attachment, garnishment, execution, creditor's bill or other legal or equitable process.

Although the trial court determined this provision qualified Bradford's Trust as a spendthrift trust, it nonetheless entered judgment for Fidelity permitting it to garnish assets in Bradford's Trust while in the hands of the Trustee. Because Bradford was not mentioned by name in Article VIII, but was only included as "any other beneficiary of any other trust under this agreement," the trial court opined that

5

> . . . this is a fairly strong indication that the testator wanted the assets of Norman Worthington and Craig Worthington to have more protection than the assets of Bradford Worthington . . . . Shielding Bradford Worthington's assets from garnishment would not do that.

Citing Blakemore v. Jones, 22 N.E.2d 112, 113 (Mass. 1939), for the principle that "the interest of a beneficiary under a spendthrift trust may be taken to make good his liability for a breach of trust in his capacity as trustee," the trial court essentially ruled that public policy permitted the garnishment of the spendthrift interest under the instant circumstances.

The Trustee contends the trial court erred as a matter of law. He argues that the will's plain language contains no provision limiting the spendthrift protection accorded by Article VIII. Furthermore, the Trustee contends the applicable statute governing spendthrift trusts, Code § 55-19, contains no provision which supports the trial court's ruling.

Fidelity responds that Gertrude could not have intended to safeguard Bradford from the consequences of his own fiduciary misconduct because Craig's Trust is larger and contains a more detailed description of the fiduciary duties with regard to expenditures and actions on Craig's behalf.[4] Further, Fidelity

---

[4] Article III of Gertrude's will sets out a five-page detailed trust for Craig's benefit, particularly addressing Craig's special needs. By contrast, Bradford's Trust consists of the following:

6

avers it is against public policy to grant anti-alienation protection to a beneficiary's trust interest for debts created by the beneficiary's defalcation as a fiduciary of that trust. We agree with the Trustee.

The scope of our inquiry is well settled.

> In construing a will there are two inquiries to be made. The first is, What is the intention of the testator as expressed by him in the words he has used? This is the animating spirit, the essence, the soul of the will. The words are the clothing, the mere vehicle used, to convey his ideas. When we once ascertain the intention of the testator, that is the governing principle, and must prevail, unless it violates some rule of law.

Sheridan v. Krause, 161 Va. 873, 884-85, 172 S.E. 508, 511 (1934) (citations and internal quotation marks omitted).

Gertrude's intent is plainly and unequivocally expressed in Article VIII. All trust beneficiaries under her will, without limitation of any kind, are accorded the anti-alienation protection of the spendthrift provisions. The fact that Craig

---

Article IV
BRADFORD N. WORTHINGTON TRUST
A. My Trustee may pay to or for the benefit of Bradford N. Worthington during his lifetime as much of the net income or principal of the Trust as my Trustee may deem appropriate for his support and health. My Trustee may distribute principal in kind while income is accumulated and shall annually add any undistributed income to principal.
B. Upon Bradford N. Worthington reaching the age of sixty (60), my Trustee shall distribute the remaining principal and any accrued or undistributed income of the trust outright to him upon his written request. If Bradford N. Worthington dies before the termination of his separate trust, my Trustee shall

is mentioned by name, while Bradford is encompassed as "any other beneficiary of any other trust under this agreement," is a distinction of no meaning or significance.  Neither the larger allocation of assets to Craig's Trust, nor the more extensive provisions for his care, limits the plain and unequivocal language of Article VIII establishing spendthrift protection for all beneficiaries.  No provision of Gertrude's will negates or limits the spendthrift protection accorded Bradford's Trust or suggests that Gertrude's will means anything other than its plain language provides.

The trial court's conclusion to the contrary ignores the plain language of the will and is clearly error.  A court has no authority to interpolate words into a will.  See Gasque v. Sitterding, 208 Va. 206, 210, 156 S.E.2d 576, 580 (1967) (words are not to be added or deleted in construing a will); Rady v. Staiars, 160 Va. 373, 376, 168 S.E. 452, 452-53 (1933) (same). It is the duty of the court to construe the will which the testator has made and not to speculate as to his intention, or to make a will for him.  See Owens v. Bank of Glade Spring, 195 Va. 1138, 1148, 81 S.E.2d 565, 572 (1954).

Accordingly, the testator's clear intent expressed in Article VIII establishing spendthrift protection for Bradford's

distribute the remaining trust estate to his descendants, per stirpes, but if there are none, to my descendants, per stirpes.

8

Trust can be abrogated in Fidelity's favor only if a rule of law requires it. To answer that inquiry, we review this Court's application of the law of spendthrift trusts and the statutory foundation of current Code § 55-19.

At common law, spendthrift trusts allowing testators or grantors to protect conveyances from future alienation by the transferee were not recognized at law or in equity. As this Court noted in Hutchison v. Maxwell, 100 Va. 169, 176-77, 40 S.E. 655, 657 (1902), "[i]t is also well settled in England that the right of alienation and liability for debts are inseparable incidents of a life estate, whether limited by way of trust or otherwise." This principle of the common law was codified by the General Assembly as early as 1787 and expressed in § 2428 of the Code of 1887 as follows:

> Estates of every kind, holden or possessed in trust, shall be subject to debts and charges of the persons to whose use or to whose benefit they are holden or possessed, as they would be if those persons owned the like interest in the things holden or possessed, as in the uses or trusts thereof.

Id. at 178, 40 S.E. at 658 (citing 12 Henings Stat. at Large, ch. 62, p. 157; 1 Rev. Code of 1819, ch. 99, sec. 30).

Accordingly, we declined in Maxwell to validate spendthrift provisions that would bar a creditor from seizing a beneficiary's interest:

9

> The legislation of this State shows that it was the
> object and policy of the Legislature to make all
> estates, where the owner is *sui juris*, liable for
> debt, whether legal or equitable, except such as might
> be exempt by express statutory provisions.  The effect
> of upholding spendthrift trusts would be to encourage
> idleness and lessen enterprise, and to foster a class
> who become more and more reckless and indifferent to
> their honest debts from a sense that they are hedged
> in by the law beyond the reach of their creditors.

Id. at 179, 40 S.E. at 658.

In 1919, the General Assembly amended former Code § 2428 by adding the following language to new § 5157:

> [B]ut any such estate, not exceeding one hundred
> thousand dollars in actual value, may be holden or
> possessed in trust upon condition that the corpus
> thereof and the income therefrom, or either of them,
> shall be applied by the trustee to the support and
> maintenance of the beneficiaries without being subject
> to their liabilities or to alienation by them; but no
> such trust shall operate to the prejudice of any
> existing creditor of the creator of the trust.

Code § 5157 (1919).

In Sheridan, we confirmed that this action of the General Assembly established the enforceability of spendthrift trusts so that the assets of a trust beneficiary, while in the hands of the trustee, were shielded from his creditors within the limits of the statute.  We declared that spendthrift protection was to be liberally construed:

> The new part of section 5157 is clearly remedial and
> not restrictive, and is to be so interpreted.  As we
> interpret it, the intention of the General Assembly in
> enacting the new matter contained in section 5157 was
> not merely to provide a begrudged exception to the
> application of the doctrine of Hutchinson v. Maxwell

10

or to the rule laid down in the old part of that section as it had been interpreted by this court in that case.  Its intention was to make a material change in the public policy of the state on this subject, and to liberalize and humanize the rule of Hutchinson v. Maxwell.

161 Va. at 895, 172 S.E. at 581.

Code § 55-19, the successor to Sections 2428 and 5157, has expanded the remedial application of spendthrift trusts in that it contains no monetary limit or limitation "for the benefit of the beneficiaries."[5]  The General Assembly has, however, specifically limited spendthrift trust protection in several enumerated circumstances set out in the statute.  Thus a beneficiary's debts in conjunction with an employee benefit plan, for child support, public assistance and medical assistance are enforceable by creditors against the beneficiary's trust interest in the hands of the trustee regardless of any spendthrift provisions the trust contains. Code § 55-19(B)-(D).

The debt Fidelity seeks to collect from Bradford, for breach of fiduciary duty, is not among the statutory exceptions

---

[5] The former monetary limit on spendthrift trusts under Code § 55-19 was abrogated in 2001, the year after Gertrude died. Acts 2001 c. 81.  In Virginia, the law applicable at the date of the testator's death is applied in interpreting the will.  See McGehee v. Edwards, 268 Va. 15, 20, 597 S.E.2d 99, 102 (2004). There is no issue in the current appeal that is affected by the provisions of Code § 55-19 as amended after Gertrude's death, and the law in effect at the date of her death is construed in this appeal.

to the coverage of Code § 55-19.  Fidelity nonetheless urges that this Court create a judicial exception, beyond the exceptions found in Code § 55-19, to statutory spendthrift trust protection.  Fidelity contends that public policy should permit a creditor, whose debt is derived from the beneficiary's breach of fiduciary duty, to reach the interests of that beneficiary while held in trust for his benefit.

Fidelity's argument must fail, however, because it ignores the plain language of the statute and the fact the General Assembly has set out with specificity any exemptions to its coverage.  We presume that the "legislature chose, with care, the words it used when it enacted the . . . statute." Simon v. Forer, 265 Va. 483, 490, 578 S.E.2d 792, 796 (2003) (citation omitted).  Courts cannot "add language to the statute the General Assembly has not seen fit to include."  Holsapple v. Commonwealth, 266 Va. 593, 599, 587 S.E.2d 561, 564-65 (2003).  "[N]or are they permitted to accomplish the same result by judicial interpretation." Burlile v. Commonwealth, 261 Va. 501, 511, 544 S.E.2d 360, 365 (2001) (citation and internal quotation marks omitted).  Where the General Assembly has expressed its intent in clear and unequivocal terms, it is not the province of the judiciary to add words to the statute or alter its plain meaning.

Code § 55-19 covers in express terms those debts not accorded spendthrift protection. "[T]he mention of . . . specific item[s] in a statute implies that other omitted items were not intended to be included in the scope of the statute." Smith Mountain Lake Yacht Club, Inc. v. Ramaker, 261 Va. 240, 246, 542 S.E.2d 392, 395 (2001). Thus, because the statute specifically lists exceptions to spendthrift protection, those exceptions are the only ones allowed by law. To affirm the trial court's addition of another exception would violate the principle of expressio unius est exclusio alterius. Under this principle, we have held that "when a legislative enactment limits the manner in which something may be done, the enactment also evinces the intent that it shall not be done another way." Commonwealth v. Brown, 259 Va. 697, 705, 529 S.E.2d 96, 100 (2000) (citation omitted). Fidelity's argument would require the Court to add an exception to the statute which the General Assembly has not seen fit to adopt. "Courts are not permitted to rewrite statutes. This is a legislative function." Anderson v. Commonwealth, 182 Va. 560, 566, 29 S.E.2d 838, 841 (1944). While the General Assembly may exclude from the protection of Code § 55-19 a beneficiary's interest in a trust for his breach of fiduciary duty, that decision is solely within the province of the General Assembly.

13

The trial court therefore erred in its judgment by creating a judicial exception to the spendthrift protection afforded by Code § 55-19.

## III.  CONCLUSION

The trial court erred in ignoring the plain language of Article VIII of Gertrude's will when it failed to accord full spendthrift protection to Bradford's Trust and bar Fidelity's garnishment.  Further, the trial court erred in concluding that a non-statutory exception to the provisions of Code § 55-19 could be created to permit a beneficiary's creditor, such as Fidelity, to reach the beneficiary's interest in a trust where that beneficiary had committed a breach of trust resulting in his liability.  Accordingly, the judgment of the trial court will be reversed and final judgment entered on behalf of the Trustee.

<u>Reversed and final judgment</u>.