COURT OF APPEALS OF VIRGINIA

Present: Judges Huff, Athey and White
Argued at Salem, Virginia

**PUBLISHED**

DANIEL ROCK

v.      Record No. 0343-22-3

COMMONWEALTH OF VIRGINIA

OPINION BY
JUDGE GLEN A. HUFF
JANUARY 24, 2023

FROM THE CIRCUIT COURT OF ALLEGHANY COUNTY
Edward K. Stein, Judge

Charles S. Moore (Law Offices of John C. Singleton, on brief), for
appellant.

Virginia B. Theisen, Senior Assistant Attorney General (Jason S.
Miyares, Attorney General, on brief), for appellee.


Daniel Rock ("appellant") was convicted in the Alleghany County Circuit Court (the "trial court") of three counts of sodomizing a child younger than 13 and two counts of aggravated sexual battery of a child younger than 13. He argues on appeal that recently enacted Code § 19.2-262.01 gave him the right to notify the jury that the sodomy charges carried mandatory life sentences, even though he never requested a jury impose his sentence. He also challenges the evidence as insufficient to support his guilty verdicts. This Court disagrees on both arguments and affirms appellant's convictions.

## I. BACKGROUND[1]

Appellant began dating Katelyn Rock in 2016, and they married in 2019. From 2018 to 2020, they lived together along with their children, stepchildren, and appellant's brother. The

---

[1] This Court "must view the evidence and any reasonable inferences fairly deducible therefrom in the light most favorable to the Commonwealth," the prevailing party at trial. *Shull v. Commonwealth*, 16 Va. App. 667, 671 (1993), *aff'd*, 247 Va. 161 (1994).

oldest of the children was K.B.,[2] Katelyn's daughter and appellant's stepdaughter, who was born in 2011.

In March 2020, when she was eight or nine years old, K.B. told her mother that appellant had sexually abused her. Katelyn called the police, and investigators came to the home and collected pairs of K.B.'s pajama pants, as well as DNA samples from K.B., appellant, and his brother.

Appellant was indicted on three counts of sodomizing a child younger than 13 years old, under Code § 18.2-67.1(A)(1), and two counts of aggravated sexual battery of a child less than 13 years old, under Code § 18.2-67.3(A)(1). For the sodomy charges, appellant faced a mandatory minimum sentence of life in prison on each charge if convicted because he "was 18 years of age or older at the time of the offense." Code § 18.2-67.1(B)(2).

Appellant requested a jury trial on the charges but did not request sentencing by a jury. The trial was held on October 5, 2021. Before trial appellant confirmed to the court that he wanted a jury trial.

The Commonwealth then asked the trial court to rule on its previously filed motion in limine to exclude any mention to the jury of the mandatory life sentences appellant would receive if convicted of the sodomy charges. It argued that because appellant had not requested that a jury fix his sentence, he had no statutory right to notify the jury of the mandatory life sentences. Appellant disagreed, maintaining that the law allowed him to tell the jury that the convictions would carry mandatory life sentences. The court noted appellant's objection and granted the Commonwealth's motion.

---

[2] This Court uses the victim's initials rather than her full name.

At trial, K.B. testified to three separate instances that served as the basis for the sodomy charges.[3] On one occasion, appellant came into K.B.'s bedroom and inserted his penis into her anus. K.B. testified that "[h]e only did it once" and that "it hurt really bad." On at least two other occasions,[4] appellant came to K.B.'s bedroom and inserted his penis into her mouth and "rub[bed] it to the side of [her] cheeks." On one of those two occasions, K.B. testified, appellant referred to his penis as a "big Popsicle."

K.B. also testified to two other instances in which appellant abused her, which served as the bases for the sexual-battery charges. One time, while appellant and K.B. were in the living room, appellant placed his hand both on top of, and inside of, K.B.'s pants to "rub" her directly on her genitals. Although she could not remember if this happened more than once, she testified that it happened at least one time. She also testified that appellant used his foot to rub her genitals "on [her] clothes" as they were lying on the living room couch.[5]

The Commonwealth introduced additional evidence to corroborate the abuse and establish a pattern of conduct by appellant. K.B. testified that on another occasion, as she sat on appellant's lap on the living room couch, he began "bouncing [her] up and down." He bounced her "fast" on his lap until Katelyn walked in, at which point appellant "pushed [K.B.] off and . . . got up." According to K.B., he then began acting "awkward and weird."

Katelyn also witnessed this event; she testified that she saw appellant "bouncing his leg" but "as soon as he saw [her], he made [K.B.] get up." He then got up and went outside, and

---

[3] K.B. could not remember the timeline or dates of any of the abuse to which she testified.

[4] Although K.B. admitted she could not remember exactly how many times appellant forced his penis into her mouth, she said it happened "[a]t least" twice.

[5] K.B. did not clarify if this happened on the same occasion as when appellant groped her with his hand.

Katelyn followed.  As she asked him why he was acting weird, "[h]e kept trying to hide his front" from her.

While they spoke outside, Katelyn noticed a wet spot on the front "upper thigh" of appellant's pants.  When she asked appellant about the spot, he claimed it was from spilling food on himself.  Appellant then returned inside and went to his bedroom closet.  Katelyn later retrieved the pants from the washing machine to inspect them before appellant could wash them; she testified the spot on the pants was "sticky" and "smelled like semen."

The Commonwealth also presented forensic evidence from a pair of K.B.'s pajama pants retrieved from the home.  Kathleen Holznagel, a forensic biologist with the Virginia Department of Forensic Science, discovered a "stain" on the pants "near [the] inseam on the back left leg," which tested positive for "an enzyme found in high concentrations of seminal fluid."  She then "developed a DNA profile from [a] sperm fraction" taken from a sample of the stain and compared the profile with K.B.'s and appellant's DNA profiles.  Holznagel determined the stain came from a single person.  She eliminated both K.B. and appellant's brother as the source of the stain but could not eliminate appellant.  Rather, she concluded appellant's "DNA profile is consistent with all the DNA types at every location for" the profile from the pajama stain, and "the probability of randomly selecting an unrelated individual with a DNA profile matching" the DNA profile from the stain "is one in greater than 7.2 billion."

When appellant testified in his defense, he denied any sexual contact with K.B.  He also said the semen stain on K.B.'s pajamas could have come from him cleaning up after sex with Katelyn.  Katelyn, however, denied having sex with appellant around that time because they had a newborn child in the home and their relationship was "on the outs."  Nor could she think of any reason why her daughter's pajamas would be stained with appellant's semen.  Katelyn also

testified that appellant had begun letting K.B. stay up past her bedtime, and he would sit on the couch with her and watch movies after everyone else went to bed.

Appellant moved to strike the evidence of the charges at the close of the Commonwealth's case and renewed that motion after presenting his own evidence. The trial court denied both motions.

The jury convicted appellant on all counts. At the later sentencing hearing, the trial court imposed three mandatory life sentences for the three sodomy convictions and twenty years' imprisonment each for the two aggravated sexual battery convictions.[6] This appeal followed.

## II. ANALYSIS

Appellant assigns three errors to the judgment below. He first argues the trial court erred in granting the Commonwealth's motion to exclude mention of possible sentences to the jury, even though he never requested jury sentencing. He cites Code § 19.2-262.01, enacted in 2020, which allows those selected as potential jurors to receive information about the possible sentence "to ascertain if the person or juror can sit impartially in the sentencing phase of the case." His second and third assignments of error challenge the sufficiency of the evidence for his convictions.

Because understanding appellant's arguments regarding Code § 19.2-262.01 requires some historical background, this Court first introduces that background.

### A. Code § 19.2-262.01

#### 1. Historical Background

In Virginia, before 2021, if a jury determined a defendant's guilt, the same jury would also determine the defendant's punishment. *Huggins v. Commonwealth*, 213 Va. 327, 328

---

[6] The court suspended ten years of each of the sexual battery sentences.

(1972).[7]  Virginia's system of requiring jury sentencing in jury trials placed the Commonwealth

within the minority among her sister States.[8]  The system was the subject of some criticism over

the years—primarily that juries were barred from receiving the sentencing guidelines and that

juries tended to impose harsher punishments than judges.[9]

---

[7] For brevity, this Court will refer to this sentencing model as "mandatory jury sentencing."  Yet some nuances are worth mentioning.  First, a jury would not conduct sentencing in "cases tried without a jury."  Code § 19.2-295 (1975) (amended 2021).  A defendant, however, must be tried by a jury unless he pleads guilty or waives a jury trial "with his consent and the concurrence of the Commonwealth's attorney and of the court entered of record."  Va. Const. art. I, § 8; *see also King v. Commonwealth*, 40 Va. App. 364, 374 (2003) (citing *O'Dell v. Commonwealth*, 234 Va. 672, 689 (1988)).

Second, a jury's sentence was not necessarily "final or absolute" because the trial judge could choose to suspend the sentence "in whole or part."  *Duncan v. Commonwealth*, 2 Va. App. 343, 345 (1986) (quoting *Vines v. Muncy*, 553 F.2d 342, 349 (4th Cir.), *cert. denied*, 434 U.S. 851 (1977)), *superseded in part by statute*, Code § 19.2-295.2.  Virginia judges may still do so under the new sentencing model.  Code § 19.2-303 (describing the trial court's power to suspend a sentence and impose probation).

And finally, since 1994, the trial judge may be required to impose an additional, suspended sentence on top of the jury's sentence.  Under Code § 19.2-295.2, a trial court conducting felony sentencing must "impose a term of incarceration, in addition to the active term, of not less than six months nor more than three years, as the court may determine," "except in cases in which the court orders a suspended term of confinement of at least six months."  *See also* 1994 Va. Acts, Spec. Sess. II ch. 1 (effective Oct. 13, 1994).  That "additional term shall be suspended and the defendant shall be ordered to be placed under post release supervision upon release from the active term of incarceration."  Code § 19.2-295.2.

[8] By 2020, only Virginia and Kentucky required jury sentencing for felonies whenever a defendant received a jury trial.  Ky. Rev. Stat. Ann. § 532.055 (West 2022).  Indeed, "[a]s of 2009, only Arkansas, Kentucky, Missouri, Oklahoma, Texas, and Virginia allowed jury sentencing" at all.  Michael C. Tillotson & Jeff Martin, *Virginia DUI Law* § 16:1 (2022); *see also* Nancy J. King & Rosevelt L. Noble, *Felony Jury Sentencing in Practice: A Three-State Study*, 57 Vand. L. Rev. 885, 886 (2004).

[9] *See, e.g.*, Caleb R. Stone, Note, *Sentencing Roulette: How Virginia's Criminal Sentencing System is Imposing an Unconstitutional Trial Penalty That Suppresses the Rights of Criminal Defendants to a Jury Trial*, 23 Wm. & Mary Bill Rts. J. 559, 559 (2014); Va. Crim. Sent'g Comm'n, *Annual Report* 26 (2018), http://www.vcsc.virginia.gov/2018AnnualReport.pdf ("[J]ury sentences were more likely to fall above the guidelines than within the recommended range.  This pattern of jury sentencing vis-à-vis the guidelines has been consistent since the truth-in-sentencing guidelines became effective in 1995.  By law, however, juries are not allowed to receive any information regarding the sentencing guidelines. . . .  In [jury] cases where the ultimate sentence resulted in a sanction more severe than the guidelines recommendation, the sentence exceeded the guidelines maximum recommendation by a median value of 49 months.").

Despite Virginia juries' dual roles, Virginia courts repeatedly rejected attempts by defendants to notify juries during the trial's guilt phase of the sentences defendants would face if convicted.[10]  In *Walls v. Commonwealth*, 38 Va. App. 273, 276, 281 (2002), this Court held a defendant had no right to tell the jury during the guilt phase of his trial that he would face a mandatory minimum sentence of two years if convicted.  The Court explained that "[t]he law applicable to determining the appropriate sentence for a defendant found guilty of the charged offense is not relevant and, therefore, falls outside the scope of permissible argument in the guilt phase."  *Id.* at 281.  Such a conclusion, the Court wrote, is consistent with the purpose of mandatory-minimum laws, which the General Assembly enacted because "[it] has determined that commission of the offense is serious enough to require the specified minimum sentence even if mitigating circumstances exist."  *Id.* at 281-82.

The Court further concluded that "the only purpose served by allowing defense counsel to present argument about the mandatory minimum sentence during the *guilt phase* is to encourage the jury to acquit the defendant even though the evidence might prove him guilty."  *Id.* at 282.  The Supreme Court agreed, confirming that "in a non-capital case, neither the defendant nor the Commonwealth has a constitutional or statutory right to question a jury panel

---

*See generally* Code § 19.2-298.01(A) ("In cases tried by a jury, the jury shall not be presented any information regarding sentencing guidelines.").

[10] Since 1994, Code § 19.2-295.1 has bifurcated trials for felonies "into two distinct phases.  The jury first resolves the issue of guilt or innocence and, 'upon a finding that the defendant is guilty . . . , a *separate proceeding* limited to the ascertainment of punishment shall be held as soon as practicable before the same jury.'"  *Daye v. Commonwealth*, 21 Va. App. 688, 691 (1996) (alteration in original) (quoting Code § 19.2-295.1); *see also* 2001 Va. Acts ch. 389 (amending the statute to also bifurcate trials for "Class 1 misdemeanors, or upon a finding in the trial de novo of an appealed misdemeanor conviction that the defendant is guilty of a Class 1 misdemeanor").

about the range of punishment that may be imposed upon the defendant." *Commonwealth v. Hill*, 264 Va. 315, 319 (2002); *see also Thomas v. Commonwealth*, 279 Va. 131, 165 (2010).[11]

But in 2020, the General Assembly enacted Code § 19.2-262.01, which, in relevant part, states, "The court and counsel for either party may inform any [venireperson] or juror as to the potential range of punishment to ascertain if the person or juror can sit impartially in the sentencing phase of the case." *See also* 2020 Va. Acts ch. 157, 588 (effective July 1, 2020).

The following year, Virginia ended mandatory jury sentencing. *See* 2020 Va. Acts, Spec. Sess. I ch. 43 (effective July 1, 2021) (codified as amended at Code § 19.2-295). The law now mandates that "the court shall ascertain" the punishment, "unless the accused is tried by a jury and has requested that the jury ascertain punishment." Code § 19.2-295. The defendant must make a written request for jury sentencing "at least 30 days prior to trial." *Id.*

In the instant appeal, appellant contends that Code § 19.2-262.01 grants him a statutory right to disclose to the jury that he would receive multiple life sentences if convicted of all charges. In advancing his argument, appellant primarily relies on the above history and his own view of the statute's purpose. Code § 19.2-262.01, he argues, "was added for the purpose of allowing the parties to inform jurors of the range of punishment, and . . . the only reason that the statute referred to the ascertainment of punishment by the jury was because, at the time of drafting, jurors always ascertained punishment in Virginia." Appellant rejects the pre-Code § 19.2-262.01 case law on the issue—including *Walls* and *Thomas*—as no longer controlling in the wake of the statute's enactment. And he contends that after the abolition of capital

---

[11] This contrasted with a "capital murder case in which the defendant [could] be subjected to the death penalty, [in which case] the parties [were] entitled to ask the members of the jury panel 'whether they can be unalterably in favor of, or opposed to, the death penalty in every case.'" *Hill*, 264 Va. at 320 (quoting *Morgan v. Illinois*, 504 U.S. 719, 735 (1992)). Virginia abolished the death penalty in 2021. 2021 Va. Acts, Spec. Sess. I ch. 344-45 (effective July 21, 2021) (codified as amended in scattered sections of the Code).

punishment in Virginia, *supra* note 11, "a mandatory life sentence is Virginia's ultimate punishment," making it "analogous to a capital case" in which the jury would receive knowledge of the possible death sentence, *see Morgan v. Illinois*, 504 U.S. 719, 735 (1992).  He also points to the mandatory nature of the sentence to argue that when a jury ascertains guilt, it effectively performs sentencing.

But all those arguments ignore the statute's text, which is where this Court must first turn to interpret the statute.

### 2. *Code § 19.2-262.01's Provision Allowing Parties to Inform Jurors of the Potential Range of Punishment Does Not Apply When a Jury Will Not Sentence the Defendant*

When interpreting statutes, this Court seeks "to ascertain and give effect to legislative intent," and it "determines [that] intent from the words employed in the statute."  *Botkin v. Commonwealth*, 296 Va. 309, 314 (2018) (first quoting *Brown v. Commonwealth*, 284 Va. 538, 542 (2012); and then citing *Alger v. Commonwealth*, 267 Va. 255, 259 (2004)).  If those words are "plain and unambiguous, [this Court is] bound by the plain meaning of that statutory language."  *Beck v. Shelton*, 267 Va. 482, 488 (2004) (quoting *Lee County v. Town of St. Charles*, 264 Va. 344, 348 (2002)).  This Court conducts its statutory interpretation analysis de novo.  *Botkin*, 296 Va. at 314.

By its own terms, Code § 19.2-262.01 allows the court or parties to notify "any person who is called as a juror" of the sentencing range for a single, specific purpose: "to ascertain if the . . . juror can sit impartially in the sentencing phase of the case."  Appellant, however, never requested that a jury sentence him.  *See* Code § 19.2-295.  In such a case, the court determines sentencing.  *Id.*  The court and parties therefore had no need to ascertain whether the jurors could "sit impartially in the sentencing phase of the case."  Code § 19.2-262.01.  Nor did the jurors have any other legitimate need for information about the possible sentences the defendant could receive, as the possible sentences were irrelevant to the issue of guilt.  *See Walls*, 38 Va. App. at

281-82. Accordingly, cases in which a defendant has not requested jury sentencing fall outside of the relevant provision of Code § 19.2-262.01, and instead the principles outlined in *Walls*, *Hill*, and *Thomas* still control.

Appellant's reference to the history of mandatory jury sentencing does not affect that interpretation. The later abolition of mandatory jury sentencing does not change Code § 19.2-262.01's clear language or necessarily render that language obsolete. Indeed, as explained above, Code § 19.2-262.01 works harmoniously within Virginia's new sentencing model. *See Cox v. Commonwealth*, 73 Va. App. 339, 344 (2021) ("[T]his Court will not examine statutes 'as isolated fragments of law, but as a whole, or as parts of a great connected, homogenous system, or a single and complete statutory arrangement.'" (quoting *Prillaman v. Commonwealth*, 199 Va. 401, 405 (1957))). And ultimately, appellant's requested interpretation would read words out of the statute—something this Court cannot do. *See Jackson v. Fidelity & Deposit Co.*, 269 Va. 303, 313 (2005).

Appellant's other supporting arguments fail too. His attempt to draw a parallel between capital cases and mandatory-life cases misses the mark. Although the United States Supreme Court has held that capital defendants have a right to "inquire into the prospective jurors' views on capital punishment" during voir dire, *Morgan*, 504 U.S. at 726, 728-29, it has never extended that same principle to defendants facing possible mandatory life sentences. That is likely because American law has traditionally treated capital sentencing differently than non-capital sentencing. *See Harmelin v. Michigan*, 501 U.S. 957, 995 (1991) ("Our cases creating and clarifying the 'individualized capital sentencing doctrine' have repeatedly suggested that there is

no comparable requirement outside the capital context, because of the qualitative difference between death and all other penalties.").[12]

Appellant also posits that because some of the crimes here would come with a mandatory-minimum sentence, the jury effectively determines the punishment when it ascertains guilt. Code § 19.2-295.1, however, requires bifurcated, "separate proceedings" for felonies (and certain other crimes), resulting in both a guilt phase and sentencing phase of the trial. *Supra* note 10. And Code § 19.2-262.01's provision allowing the parties to inform the jurors of "the potential range of punishment" to determine their impartiality refers only to the "sentencing phase"—not the guilt phase. *See Cox*, 73 Va. App. at 344 (explaining that the Court must read statutes as a "single and complete statutory arrangement" (quoting *Prillaman*, 199 Va. at 405)). Again, this Court cannot overlook that unambiguous language.[13]

---

[12] To elaborate, while mandatory death sentences are unconstitutional, mandatory life sentences generally are not. *Compare Woodson v. North Carolina*, 428 U.S. 280, 303 (1976) (plurality opinion) (finding defendants' mandatory death sentences required by state law violative of the Constitution), *with Harmelin*, 501 U.S. at 994-96 (holding the mandatory nature of a life sentence does not per se violate the Eighth Amendment). *But see Miller v. Alabama*, 567 U.S. 460, 479 (2012) ("[T]he Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders."). *See generally Vasquez v. Commonwealth*, 291 Va. 232, 240-41 (2016) (describing the Supreme Court's two approaches in evaluating the proportionality of a sentence, and therefore its constitutionality).

That is so because the Eighth Amendment requires, for capital sentencing, a consideration of the existence of aggravating factors to determine whether capital punishment is appropriate in a certain case. *See Eddings v. Oklahoma*, 455 U.S. 104, 112 (1982); *see also Jurek v. Texas*, 428 U.S. 262, 271 (1976) (plurality opinion). But imposition of a life sentence does not require such an inquiry. A capital jury therefore has wider latitude in choosing an appropriate sentence than a jury in a mandatory-life case. That wider latitude, coupled with concern over pro- or anti- death-penalty bias, justified the additional screening *Morgan* imposed for capital cases. *See Morgan*, 504 U.S. at 729. That constitutional concern is not present when a defendant faces a mandatory life sentence.

[13] Code § 19.2-295.1's bifurcation of certain trials "assures the jury access to 'information specific only to sentencing, apart from considerations of guilt or innocence,' thereby promoting a punishment appropriate to the circumstances without corrupting the initial determination of guilt or innocence with prejudice." *Daye*, 21 Va. App. at 691 (quoting *Gilliam v. Commonwealth*, 21 Va. App. 519, 525 (1996)). "[T]he only purpose served by allowing defense counsel to present argument about the mandatory minimum sentence during the *guilt*

Code § 19.2-262.01's straightforward language dictates a straightforward rule: the relevant provision of the statute applies only where a defendant has requested jury sentencing. The trial court therefore did not err in granting the Commonwealth's motion in limine.

## B. Sufficiency of the Evidence

Having resolved appellant's first assignment of error, this Court next turns to his assertion that the Commonwealth's evidence failed to establish his guilt beyond a reasonable doubt on all charges. He claims the witness testimony was contradictory, that the evidence was insufficient to prove the acts took place, and that the evidence did not establish his intent. This Court disagrees with appellant.

On a challenge to the sufficiency of the evidence, "the appellate court 'ask[s] whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."'" *Nelson v. Commonwealth*, 73 Va. App. 617, 622 (2021) (alteration in original) (quoting *Robinson v. Commonwealth*, 70 Va. App. 509, 513 (2019) (en banc)). On the evidence here, a rational factfinder could do so.

For the three sodomy charges, K.B. testified in detail about three distinct acts by appellant, noting the pain she experienced and that appellant once referred to his penis as a "Popsicle." She gave unequivocal answers that he violated her at least three times; while she could not remember how many times exactly, she remembered appellant put his penis in her mouth at least twice and in her anus at least once. The jury was entitled to believe her testimony. *Dalton v. Commonwealth*, 64 Va. App. 512, 525 (2015); *see also Ashby v. Commonwealth*, 33 Va. App. 540, 548-49 (2000). Moreover, a factfinder could consider the semen stain on K.B.'s pajamas—which likely came from appellant—as corroborating K.B.'s testimony.

---

phase is to encourage the jury to acquit the defendant even though the evidence might prove him guilty." *Walls*, 38 Va. App. at 282. Reading the statute to allow such a system would thus lead to an unreasonable result.

The two charges for sexual battery accounted for two additional instances of abuse: when appellant groped K.B.'s genitals with his hand and foot. She again testified in detail as to how appellant grabbed her genitals both on top of and under her clothes with his hand. Additionally, she testified that he also rubbed her genitals with his foot as they lay on the living room couch.

Contrary to appellant's view, a rational factfinder could accept K.B.'s testimony as true. *Dalton*, 64 Va. App. at 525; *see also Ashby*, 33 Va. App. at 548-49. Furthermore, based on K.B.'s descriptions of appellant groping her with his hand and foot, a rational factfinder could infer appellant intended to "sexually molest" K.B. and "sexually . . . gratify" himself. Code § 18.2-67.10(6) (defining "sexual abuse" as certain acts "committed with the intent to sexually molest, arouse, or gratify any person"); *see also* Code § 18.2-67.3 (defining "aggravated sexual battery" as when a person "*sexually abuses* the complaining witness" and an additional aggravating factor is present (emphasis added)).[14]

Moreover, the additional incident, in which appellant aggressively bounced K.B. on his lap, corroborated her allegations and showed appellant had a history of exploiting his relationship with K.B. for sexual gratification. Both K.B. and Katelyn testified to that incident, and Katelyn's additional observations corroborated K.B.'s description. Immediately after appellant stopped bouncing K.B. on his lap, he tried to hide a stain on his pants—a stain that Katelyn believed to be semen. This incident, coupled with K.B.'s descriptions of appellant rubbing her genitals, provided ample evidence for the jury to determine his intent. The evidence therefore supported appellant's guilty verdicts.

---

[14] Although appellant also contended on brief that the evidence did not establish specific intent as to support the sodomy charges, the crime of sodomy is a general intent, rather than specific intent, crime. *Bowden v. Commonwealth*, 52 Va. App. 673, 678 (2008).

## III. CONCLUSION

Code § 19.2-262.01's provision allowing the parties to inform jurors of the "potential range of punishment" applies only when a defendant "is tried by a jury and has requested that the jury ascertain punishment" under Code § 19.2-295. Additionally, the evidence here was sufficient to convict appellant. For those reasons, this Court affirms appellant's convictions.

*Affirmed.*